**GOUNARES BROS. & CO., Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant (two cases).**

**Civ. A. Nos. 2105, 2207.**

United States District Court
S. D. Alabama, S. D.

July 29, 1960.

Vincent F. Kilborn, Abraham A. Mitchell, Mobile, Ala., for plaintiff.

Ralph Kennamer, U. S. Atty., Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

These actions were brought by the plaintiff, Gounares Bros. & Co., Inc., against the United States of America, seeking to recover income and excess profit taxes allegedly erroneously assessed and paid for the years 1951 and 1953.[1] Inasmuch as the determination of both claims rests upon the activities of a single claimant corporation and arise out of certain transactions engaged in by said

---

[1] Civil Action No. 2105 seeks to recover the amount of $473.90 allegedly erroneously assessed and paid for the tax year ending in December of 1953. Civil Action No. 2207 seeks the recovery of income and excess profits taxes allegedly erroneously assessed and paid for the year ending December 1951, in the amount of $52,874.95.

claimant, these cases were ordered consolidated for trial and will be considered together in a single opinion.

The Internal Revenue Commissioner asserted deficiencies in the amount of $473.90 for the taxpayer's 1953 tax report, holding the amount of the president's salary excessive; and asserted deficiencies in the amount of $52,874.95 for the taxpayer's 1951 return, based on disallowance of certain accruals for interest and depreciation. In 1952, the Commissioner granted an over-assessment in the amount of $3,229.50, which amount was applied to the 1951 deficiency, and this amount the taxpayer is entitled to have reimbursed provided its claim here is valid. These asserted deficiencies are the amounts which the taxpayer seeks to recover in these actions.

In December of 1946, Alex Gounares, president of the plaintiff corporation herein, purchased the steamship William R. Gibson, later named the Ourania Gounares, from the United States Maritime Commission for a consideration of $231,611. Additional equipment was purchased by him to properly outfit the vessel for sea duty, which brought the total cost to $245,031.39.

Gounares Bros. & Co., Inc., plaintiff herein, was incorporated on February 6, 1947, under the laws of the State of Alabama, with an authorized capital of $25,000 divided into 250 common shares of stock at $100 par value. The stock was all held by members of the Gounares family,[2] with Alex Gounares owning more than 50% of the corporation's stock.

The corporation's primary business activity consisted of the operation of the Ourania Gounares. The principal place of business was Mobile, Alabama.

Shortly after the incorporation of the company, Alex Gounares transferred the vessel to it.[3] At a special meeting of the board of directors held on February 12, 1948, the taxpayer corporation was authorized to execute a promissory note for $215,254.15 in favor of Alex Gounares, payable one year from the date thereof with interest at the rate of 4% per annum. The taxpayer corporation was also authorized to execute a preferred mortgage on the vessel to secure payment of the note. Although these instruments were prepared, they were never actually executed.

There was no interest expense, in connection with the liability due Alex Gounares, accrued on the taxpayer's books for any year until the close of 1951, when the amount of $52,227.43 was accrued. This entire amount was paid to Gounares in the early months of 1952, and was reported by him in his individual tax return for that year. On the corporate return for 1951, the Commissioner allowed $8,926.84 of the $52,227.43 accrued amount to be deducted as properly allocable to 1951, and found that the remaining $43,300.59 was not deductible for the year 1951. The disallowance was based upon the fact that since the taxpayer corporation was operating on the accrual basis, it was prohibited from deducting in the year 1951 the interest expense that should have been accrued in the years 1948, '49, and '50, citing section 24(c) of the Internal Revenue Code of 1939, as amended, as authority for the disallowance. The taxpayer contends that that section, as amended, permits the deduction.

As to the disallowance of a change in the rate of depreciation, from the date of its inception until the outbreak of the Korean conflict, the business of the corporation had not been profitable; however, during the months of the Korean conflict, the vessel was on order con-

2. Alex Gounares, his wife, and two of his brothers held all of the corporation's stock. The shares were proportioned as follows: Alex Gounares, 150 shares; Olga Gounares (wife of Alex Gounares), 25 shares; Petros Gounares, 50 shares; and Harry Gounares, 25 shares.

3. The evidence is conflicting as to the bookkeeping entry which the taxpayer used to show this transfer. Testimony of witnesses was to the effect that the entry appeared as "note payable," "notes payable," "due Alex Gounares," or just a debt.

tinuously and the operation of the business began to show a definite profit. Due to this increased activity, the taxpayer changed its method of computing depreciation on the vessel from 10% per annum to 20% per annum. The Commissioner disallowed this acceleration of depreciation and consequently notified the taxpayer of this further deficiency in its 1951 return.

In 1953, the corporation paid Alex Gounares $9,000 in salary. The Commissioner determined that this salary was not commensurate with the actual services rendered by Gounares, that $1,000 was a more reasonable salary, and disallowed the claimed deduction by the taxpayer for 1953, which resulted in a tax deficiency in the amount of $473.90.

## Discussion

These cases raise three major issues for determination by the Court. Civil Action 2105 presents the question of the reasonableness of the 1953 salary paid to Gounares. Civil Action 2207 presents dual questions of (1) whether or not the Commissioner erred in disallowing the deduction claimed on the interest payment to Gounares, and (2) whether or not the method utilized by the taxpayer

to compute depreciation on the Ourania Gounares was correct. In order to preserve continuity and clarity, these issues will be examined in the order in which they arise, rather than the order in which the actions were filed.

## Interest Aspect

As it has been indicated above, there was no interest expense, in connection with the liability due Gounares, accrued on the taxpayer's books for the years 1948, 1949, and 1950. Then, in 1951, the amount of $52,227.43 was accrued and subsequently paid to him in the early part of 1952. The Commissioner found that $43,300.59 of this amount was not deductible, on the ground that the taxpayer was prohibited from deducting interest expenses in 1951 which had actually accrued in 1948, 1949, and 1950. The taxpayer contends that the interest expense was accruable and includible in the income of Alex Gounares as constructively received. It further argues that inasmuch as Gounares consented to the inclusion of the interest in his 1952 tax return, the deduction should be allowed under the provisions of section 202 of the Technical Changes Act of 1953, c. 512. 67 Stat. 617, amending 26 U.S.C. 1952 ed., § 24(c).[4] On the other hand, the

4. 1953 U.S.Code Cong. and Adm.News, p. 2426, Section 202, sets forth the purpose of the amendment as follows:

"In the case of certain closely related taxpayers, such as a corporation and a shareholder owning more than 50 percent of the corporation's stock, section 24 (c) of the code operates to disallow deduction of certain expenses and interest if the following conditions are met:

"(1) The amount is not paid within the taxable year or within 2½ months after the close thereof; and

"(2) Under the recipient's method of accounting the amount is not, unless paid, includible in his income in the taxable year in which, or with which, the taxable year of the payor corporation ends.

"This provision is intended to insure that transactions between such related taxpayers do not operate to shift items of income or deductions. A situation has been called to the attention of your committee, however, where section 24(c) may work an undue hardship. For ex-

ample, a recipient on the cash basis *may have an amount credited to his account and made available to him* by the corporate payor within 2½ months after the close of the payor's taxable year *so that the recipient must include it in income as an item constructively received* in the taxable year so credited. *If, however, the corporate taxpayer fails actually to pay over such amount* within the period of 2½ months, *the item will not be allowed to the corporation as a deduction.* Your committee believes that such a case should not fall within the ban of section 24(c) and the bill so provides by an appropriate amendment of requirement (1) above.

"The provision is applicable to taxable years of the payor beginning after December 31, 1950, but under certain conditions, * * * the payor may elect to make this amendment applicable to taxable years beginning after December 31, 1945, * * *". (Emphasis supplied.)

Government contends that the deductions should be disallowed under the identical amendment of the Internal Revenue Code. 26 U.S.C.A., Internal Revenue Code of 1939, § 24(c), as amended.

Section 24(c), as amended, specifies that no deduction shall be allowed as accrued interest under section 23(b)[5] of the Internal Revenue Code of 1939, if three circumstances exist, to wit:

"(1) If within the period consisting of the taxable year of the taxpayer and two and one-half months after the close thereof (A) such expenses or interest are not paid, and (B) the amount thereof is not includible in the gross income of the person to whom the payment is made; and

"(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

"(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)."

There is no dispute as to the third condition set forth in section 24(c). Since Alex Gounares owned more than 50% of the stock of the corporation, as between him and the taxpayer, losses would be disallowed under section 24(b) (1) (B). The dispute arises over the interpretation of the first two conditions. The effect of the amendment made to paragraph 1 (section 24(c) (1)) was to permit a deduction for accrued interest paid on an indebtedness to a closely related taxpayer, provided the payment was at least constructively received by the payee within two and one-half months after the close of the taxpayer's taxable year and included in payee's income in the taxable year so credited. Here there is no question but what the taxpayer made the payment within the required length of time for the year 1951. The problem arises as to whether or not the payments were at least constructively received by Gounares within the required period of time for the years 1948, 1949, and 1950 (and includible in payee's income for those years). If so, then the plaintiff is entitled to recover the deduction claimed (under certain conditions set forth in the Technical Changes Act of 1953).

The evidence is undisputed that Mr. Gounares never physically received any of the interest on the alleged indebtedness until the early part of 1952, which time was within the two and one-half month period prescribed in the Act for the payment of interest accrued for the preceding taxable year of 1951. Therefore, any payments on the interest indebtedness during the other years would of necessity have had to be constructively paid to and received by Gounares and includible in his income for those years. Constructive receipt has been defined, as it applies to the tax laws, as "taxable income which is unqualifiedly subject to the demand of the taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash." Ross v. C. I. R., 1 Cir., 1948, 169 F.2d 483, at page 490, 7 A.L.R. 2d 719. It is stated in Federal Tax Regulations, 1955 ed., sec. 39.42–2, page 249:

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the

5. 26 U.S.C., 1952 ed., sec. 23(b) states that "In computing net income there shall be allowed as deductions: * * *

(b) All interest paid or accrued within the taxable year on indebtedness * *".

income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, ·if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute a receipt."

■ In the present case there was no evidence introduced that the taxpayer could have paid Gounares at the close of the years 1948, 1949, and 1950. As a matter of fact, the evidence is to the contrary. There was no interest obligation accrued on the corporate taxpayer's books for the years in question; there were no funds set aside or earmarked for the obligation due Gounares. It is difficult to visualize a receipt, either constructive or actual, where there are no funds available for payment and where there is no bookkeeping entry evidencing a credit to the account of the payee.

The plaintiff kept its books on an accrual basis while Gounares kept his books on a cash basis. Consequently, the interest payments sought to be deducted in 1951 should have been accrued for during each separate year of accrual.[6] Admittedly, Gounares reported the interest payment in his 1952 tax return; however, he made no report of accrued interest in 1948, '49, and '50. Section 39.43–2, Fed.Tax Regulations, 1955 ed., page 252, promulgated under the Internal Revenue Code of 1939, provides:

"The expenses, liabilities, or deficit of one year cannot be used to reduce the income of a subsequent year. A taxpayer has the right to deduct all authorized allowances, and it follows that if he does not within any year deduct certain of his expenses, losses, interest, taxes, or other charges, he cannot deduct them from the income of the next or any succeeding year."

It follows from the foregoing that the corporate taxpayer herein cannot deduct in 1951 interest allegedly accrued in previous years which was not carried on the company books and which existed as an accrual only through a mutual agreement of the shareholders. This is due to the fact that the company's tax liability became definite and absolute at the close of each accrual year for that particular year. The interest on the nonexecuted note given to Mr. Gounares was payable annually and was a liability for the year in which it was due, regardless of whether or not there were actual funds on hand to pay the interest indebtedness.

Section 24(c) of 26 U.S.C.A., Internal Revenue Code of 1939, as amended by Section 202 of the Technical Changes Act of 1953, specifically requires that payment be received by the payee (Mr. Gounares) within two and one-half months after the close of the taxpayer's taxable year in order for the taxpayer (Gounares Bros. & Co., Inc.) to be entitled to the deduction. In 1948, 1949, and 1950, the interest was not received by the payee, Gounares, either actually or constructively, and was not includible in his gross income for those years; consequently, the corporate taxpayer has failed to bring itself within the purview of the Technical Changes Act of 1953, and the claimed deduction in one year for the interest due in prior years was properly disallowed by the Commissioner.

■ Having reached the above conclusion, it is not necessary for the Court to pass upon the question raised by the

6. United States v. Olympic Radio & Television, Inc., 1954, 349 U.S. 232, 75 S. Ct. 733, 99 L.Ed. 1024; Miller & Vidor Lumber Co. v. C. I. R., 5 Cir., 1930, 39 F.2d 890.

Government pertaining to the judicial doctrine of "thin incorporation", which is an illustrative name for an inadequately capitalized corporation.[7] Under this theory, the Government contends that the transfer of the vessel to the corporation by Gounares created not a loan, but a capital investment. Consequently, the Government would have the advances paid to Mr. Gounares in 1951 treated as payments of dividends rather than payments of interest.

The authorities are in accord that the determination of this question is one of fact based upon intent and the taxpayer has the burden of establishing his right to the interest deduction. White v. United States, 1938, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; Matthiessen v. C. I. R., 2 Cir., 1952, 194 F.2d 659.

The question of thin incorporation has arisen in the Fifth Circuit on at least four occasions.[8] In the Rowan decision, supra, the Court of Appeals states that the question of whether or not an advance is a loan or a capital investment depends upon the intent of the parties, and this intent must be ascertained from all the relevant facts and circumstances. That opinion goes on to set forth various facts from which an inference of capital investment may be drawn. These are "that the initial payments, both capital and advances, were all made for acquisition of capital assets * * *; or the issuance of certificates of stock * * *; or subordination to other indebtedness; or inordinately postponed due date; or agreement not to enforce collection; or provision for payment of 'interest' only out of earnings; or payment of advances as initial funds to start the corporate life * * *".[9] In the instant case, Mr. Gounares was president of the taxpayer corporation and paid for all of the capital stock with his own funds. There was no maturity date fixed for the obligation due him and the instruments evidencing the obligation were never executed; Gounares was to be repaid only if the corporate venture was successful; the obligation was subordinate to the obligations owing to other creditors; and the acquisition of the vessel was the sole capital asset of the corporation at its inception. These facts do meet some of the criteria set forth in the Rowan opinion, but one important consideration is absent in the instant case. That consideration is the intent of Mr. Alex Gounares to create a capital investment rather than a bona fide loan. It was never Gounares's intent that the transfer create anything other than a debt. In fact, the Internal Revenue Service allowed an interest deduction on the obligation in 1951 and 1952. There was never an attempt to reclassify the transaction until the trial date of these cases. Be that as it may, however, the Court is not convinced that the facts reveal any-

7. At the trial of this case the plaintiff's counsel raised a serious objection to the government's contention that the transfer of the vessel was a capital transfer and not a loan. This objection was based on the fact that the issue had not been raised at the pre-trial conference of the case. The Court instructed the litigants that it was quite willing to postpone the trial and hold another pre-trial conference in order to resolve any difficulties in which counsel may have found themselves as a result of the issue being raised for the first time. Counsel agreed to continue with the trial and the plaintiff was given a continuing objection to any evidence regarding this particular question. Subsequent to the trial, counsel for the plaintiff submitted a voluminous brief in which the question of capital investment as opposed to a loan was discussed and argued. While the Court is of the opinion that the claim should be disallowed on the basis set forth in the preceding text, the issue will be discussed.

8. Rowan v. United States, 5 Cir., 1955, 219 F.2d 51; Sun Properties, Inc. v. United States, 5 Cir., 1955, 220 F.2d 171; Camp Wolters Enterprises, Inc. v. C. I. R., 5 Cir., 1956, 230 F.2d 555; Aqualane Shores, Inc. v. C. I. R., 5 Cir., 1959, 269 F.2d 116.

9. Rowan v. United States, supra, 219 F.2d at page 55.

thing other than a debt owed by the taxpayer to Alex Gounares. The evidence overwhelmingly illustrates that it was the intent of the parties to consider the transaction as a loan and not as a contribution to capital.

### Depreciation Aspect

The Ourania Gounares was built in Oregon in 1919 and was a World War I Liberty Ship, more commonly known as a Hog Islander. At the time the vessel was acquired, the taxpayer estimated its useful life to be ten years and claimed depreciation on that basis for the years 1947 through 1950. In 1951, the depreciation was accelerated to 20% per annum. This acceleration rate was based on the continuous operation of the vessel during the Korean conflict—the taxpayer claiming that the excessive use of the aged vessel was instrumental in its decision to accelerate.

■ The Commissioner disallowed the acceleration, due to the fact that the taxpayer failed to show that the useful life of the vessel was materially reduced as a result of increased usage. No evidence was introduced at the trial, other than the continuous use of the vessel, to substantiate the plaintiff's claim. Under these circumstances, the taxpayer was not entitled to accelerate the depreciation of the vessel for tax purposes. What constitutes depreciation is usually a question to be decided from the facts presented. Depreciation is at best a bookkeeping entry and must be estimated by the party claiming the same. Needless to say that some items of equipment depreciate more rapidly than do others, depending upon their age and usage. Each case must be examined separately to determine depreciation.

The Ourania Gounares was some twenty-five years old when it was purchased or acquired by the taxpayer. At that time the rate of depreciation was figured to be 10% per annum, based upon a life expectancy of ten years. For a period of some fourteen months, the vessel was used more regularly than during the remainder of the time of its operation. Because of this increased usage, the age of the vessel, and lack of maintenance during the Korean conflict, the taxpayer decided to increase depreciation to the rate of 20% per annum. These conditions do not warrant an acceleration in depreciation.

■ In figuring its depreciation on the vessel, the taxpayer did not take into consideration the salvage value of the vessel. The taxpayer takes the position that its failure to do so was based upon the fact that the vessel was over thirty years old and that the possibility of its having any scrap value was contingent and unascertainable. The taxpayer further argues that if the vessel had become disabled at sea, it would not have been worth the towing charges to have it recovered. As a matter of fact, the vessel was sold in 1952 for $150,000. It was reasonable for the taxpayer to expect that a vessel weighing some 8,500 dead weight tons was of some scrap value. The Commissioner estimated the vessel had a salvage value of $17,000.[10] The taxpayer offered no evidence to refute the reasonableness of this value. In view of these circumstances, the Court finds that under the evidence this was a reasonable figure, and therefore will not disturb the conclusion of the Commissioner.

### Salary Aspect

In 1953, the corporation paid Alex Gounares $9,000 in salary. During that year, Gounares made several trips to New York and other ports in an endeavor to obtain another vessel for the corporation. He also spent time terminating the affairs of the Ourania Gounares. The testimony was to the effect that he spent time carrying out the duties of his office as president of the corporation during the year for which the salary was paid.

10. The taxpayer's accountant testified the vessel weighed "about 8,500 dead weight tons." Consequently, the Internal Revenue Service determined the $17,000 figure at $2 per dead weight ton.

The Internal Revenue Service determined that the $9,000 salary was not commensurate with the services actually rendered by Gounares, holding that $1,000 was a more reasonable salary, and accordingly assessed the taxpayer with a deficiency in the amount of $473.90.

In the year 1952, the taxpayer corporation had paid Gounares a salary of $25,000 for services similar to those rendered in 1953, and said salary was found to be reasonable by the Commissioner.

 The burden of proof is on the corporate taxpayer to show that the salary was reasonable and commensurate with the services actually rendered by the employee or officer. Once the taxpayer has established what it considers to be a reasonable salary and supports the same with acceptable evidence, the duty shifts to the government to refute such evidence. Where, as here, the government offers no evidence to contradict the evidence of the taxpayer as to the reasonableness of the salary paid, but merely arbitrarily determines the salary paid to be unreasonable because the business has temporarily recessed, the evidence offered by the taxpayer, if reasonable and just, when considered in the light of the facts and circumstances, will be given effect. See R. P. Farnsworth & Co. v. Commissioner of Internal Revenue, 5 Cir., 1953, 203 F.2d 490.

In the instant case, the salary of $9,000 was reasonable in view of the facts and circumstances. Therefore, the plaintiff is entitled to recover the assessed deficiency in the amount of $473.90, together with interest allowed by law.

In accordance with the above opinion, a decree will be entered for the defendant, United States of America, in the case styled "Civil Action 2207"; and a decree will be entered in favor of the plaintiff corporation in "Civil Action 2105":

The foregoing opinion incorporates the Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure. Fed.Rules Civ. Proc. Rule 52, 28 U.S.C.A.