Evwalt Development Corporation v. Commissioner. Walter Kunz and Evelyn Kunz v. Commissioner.
Evwalt Development Corp. v. Commissioner
Docket Nos. 91407 and 91429.
United States Tax Court
T.C. Memo 1963-56; 1963 Tax Ct. Memo LEXIS 286; 22 T.C.M. (CCH) 220; T.C.M. (RIA) 63056; February 27, 1963
Donald E. Calhoun, Esq., 514 First National Bank Bldg., Cincinnati, Ohio, for the petitioners. Dennis J. Fox, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of Evwalt Development Corporation for the taxable year 1958 in the amount of $24,183.79 and deficiencies in the income tax of Walter and Evelyn Kunz for the taxable years 1957 and 1958 in the amounts of $12,277.42 and $16,810.09, respectively. Some of the issues have been disposed of by agreement of the parties, leaving for decision the following: (1) Whether the conveyance by Walter and Evelyn Kunz to the Evwalt Development Corporation of 47.17 acres of land in Hamilton County, Ohio, which at the time of conveyance was subject to a mortgage, in return for a note *287 and mortgage from Evwalt Development Corporation, is a sale by Walter and Evelyn Kunz as contended by petitioners or a contribution of the equity of Walter and Evelyn Kunz in the property to the capital of the corporation with repayment of the note constituting a dividend to Walter and Evelyn Kunz to the extent of the current earnings of the corporation available for dividend as contended by respondent. (2) Whether the basis of Evwalt Developement Corporation in the land conveyed to it by Walter and Evelyn Kunz was the basis therein of Walter and Evelyn Kunz or the amount of the note given to Walter and Evelyn Kunz in return for the conveyance. (3) Whether Evwalt Development Corporation was holding 41.1 acres of the real estate which had been conveyed to it by Walter and Evelyn Kunz for sale to customers in the ordinary course of its trade or business at the time it sold such land to Allied Homes Development, Inc. Findings of Fact Some of the facts have been stipulated and are found accordingly. Walter and Evelyn Kunz, husband and wife residing during the taxable years 1957 and 1958 in Cincinnati, Ohio, filed joint Federal income tax returns for those years with the district *288 director of internal revenue of Cincinnati, Ohio. Evwalt Development Corporation, hereinafter referred to as Evwalt, is an Ohio corporation, incorporated in 1956 with its principal office during the years here involved located in the home of Walter and Evelyn Kunz. Evwalt filed corporate Federal income tax returns for the taxable years 1957 and 1958 with the district director of internal revenue at Cincinnati, Ohio. Walter and Evelyn Kunz during the taxable years 1957 and 1958 kept their books and prepared their income tax returns on a calendar year basis and on the cash receipts and disbursements method of accounting. During the years 1957 and 1958 Evwalt was in the business of subdividing unimproved land into lots, laying out and building streets and sidewalks and installing utilities, so that the lots might be used for home sites and selling these lots singly or in groups. Evwalt kept its books and filed its Federal income tax returns on a calendar year basis and on an accrual method of accounting. Prior to the incorporation of Evwalt, Walter Kunz had been engaged as an individual proprietor in the following businesses under the name indicated: The Walt Kunz Company doing *289 business as a general contractor in heavy road construction, excavating, constructing sewers, and other similar work. Bethel Supply Company engaged in the manufacture and sale of ready-mix concrete in Clermont County, Ohio. Newport Concrete Company engaged in the manufacture and sale of ready-mix concrete in Newport, Kentucky. Kunz Land Development Company engaged in the business of subdividing raw land into lots, providing such lots with streets and utilities for home sites and selling the lots for use as home sites. The financial records of all these various businesses conducted by Walter Kunz were contained in one set of books, the Walt Kunz Company accounts being kept on a cash receipts and disbursements basis and the Bethel Supply Company, Newport Concrete Company, and the Kunz Land Development Company accounts on an accrual basis of accounting. In 1956 the Walter Kunz Company obtained contracts for two projects for the city of Cincinnati and in connection therewith was required to, and did, put up bonds for the proper performance of the work. In the late summer of 1956 Walter Kunz held conferences with the representatives of a bank in an effort to arrange for the *290 establishment of a line of credit and for discounting his accounts receivable. The officials of the bank advised him that it would not extend credit or discount his receivables until his businesses were separated so that the bank could determine the respective equities of each business and that he should incorporate each of his various business enterprises. Evwalt was incorporated on October 29, 1956, and on or about November 8, 1956, Walter and Evelyn Kunz each subscribed to and paid for five shares of the capital stock of Evwalt at $100 per share, making a total of $1,000. Walter Kunz became president of Evwalt; Evelyn Kunz, vice president and treasurer; and Donald E. Calhoun, a Cincinnati attorney, was named secretary of the corporation. These three individuals also formed Evwalt's board of directors. On December 19, 1956, Evwalt's board of directors held a special meeting to consider the offer of Walter Kunz to convey five lots which he then owned to Evwalt for the amount of $18,500 to be paid for by the issuance of 185 shares of Evwalt's capital stock to Walter Kunz in lieu of cash. The 10 shares of Evwalt's stock originally issued and the 185 shares issued for the lots transferred *291 to Evwalt by Walter Kunz, totalling 195 shares, constituted all of the issued and outstanding stock of Evwalt during the years here involved. The conveyance of the five lots to Evwalt was by two deeds from Walter and Evelyn Kunz, each dated December 28, 1956, and recorded in the records of Hamilton County, Ohio, on December 29, 1956. Neither of these deeds had attached thereto any documentary stamps. Each of these deeds was prepared by an attorney. The initial capitalization of Evwalt was made at the suggestion of a certified public accountant employed by Walter Kunz who had advised Kunz that between $15,000 and $25,000 would be sufficient capital for Evwalt to commence operation. At the time Evwalt was organized both Walter and Evelyn Kunz recognized that it would be necessary for Evwalt to borrow money to conduct the business of developing land. On January 15, 1957, a special meeting of the board of directors of Evwalt was held for the purpose of considering the purchase for $50,000 of certain real estate known as the Wolfangle Road property from Walter Kunz in order to develop a portion of Kunzdale Subdivision in Hamilton County, Ohio. A motion was passed that the land be *292 purchased and negotiations undertaken to borrow the money necessary to construct streets, sewers, and water mains for the subdivision. The property was then subject to a mortgage from Walter Kunz to Walldon, Inc., a Cincinnati lending institution. It was estimated that the cost of the construction of streets, sewers, and water mains for the subdivision would be approximately $136,000 and that the minimum needed to purchase the land and to begin the development of the subdivision would be $110,000. At a special meeting of Evwalt's board of directors on April 1, 1957, the terms and conditions under which Walldon, Inc., would lend Evwalt $110,000 for the purpose of developing the Wolfangle Road property were presented and the board of directors by unanimous vote passed a resolution to borrow $110,000 from Walldon, Inc., for the purpose of developing a portion of the Kunzdale subdivision. On April 5, 1957, Walter and Evelyn Kunz conveyed the Wolfangle Road property by general warranty deed to Evwalt. The deed was recorded in the records of Hamilton County and had attached to it documentary stamps in the amount of $55, indicating a purchase price of $50,000. Walter and Evelyn Kunz *293 were paid by Evwalt for the Wolfangle Road property by Evwalt's crediting the outstanding mortgage from Kunz to Walldon, Inc., with the sum of $26,200 which was debited against the loan of $110,000 made by Evwalt from Walldon, Inc., and giving Walter and Evelyn Kunz a note in the amount of $23,800 for the balance of the payment. The balance of the $110,000 note used to pay the mortgage of Walter and Evelyn Kunz to Evwalt was to be drawn by Evwalt from Walldon, Inc., as development of the property proceeded, and as lots were sold payments were to be made on the mortgage of $2,500 from the proceeds of each lot sold. One block of lots in the Wolfangle Road tract was already developed and ready for resale but the rest of the land in the tract needed extensive development work. This property was developed in three separate sections. Evwalt owned no machinery or equipment of any kind and it was accordingly necessary that all of the development work be performed for it by contractors. Much of the physical preparation of the land was done by Walter Kunz's individual proprietorship, the Walt Kunz Company. It was a common practice for land developers in the Cincinnati, Ohio area to subcontract *294 most of the development work to other firms. The note for $23,800 given by Evwalt to Walter Kunz as part payment for the Wolfangle Road development was recorded on the books of the Walt Kunz Company as a note receivable. During the year 1957 four of the five lots originally conveyed by Walter Kunz to Evwalt were sold for a total amount of $18,330. These lots were the only sales made by Evwalt in 1957. In 1956 Walter Kunz had acquired title to two parcels of real estate on Markley Road in Anderson Township, Hamilton County, Ohio, one parcel consisting of 9.78 acres and the other of 37.39 acres. The larger parcel was subject to a $30,390 mortgage to August and Etta Bridges, the persons from whom Walter Kunz had acquired this larger tract. On December 27, 1957, Walter and Evelyn Kunz conveyed by general warranty deed 9.78 acres of land fronting on Markley Road to Evwalt. This deed had attached documentary stamps in the amount of $25.30 indicating a sales price of $23,000. Also, on December 27, 1957, Walter and Evelyn Kunz by general warranty deed conveyed 37.39 acres of land fronting on Markley Road to Evwalt. This deed had attached documentary stamps in the amount of $101.75, *295 indicating a purchase price of $92,500. Simultaneously with the delivery of the two deeds to Evwalt, that corporation executed and delivered to Walter and Evelyn Kunz its negotiable promissory note in the amount of $115,500 dated December 27, 1957, bearing interest at 6 percent per annum and payable in annual installments of $38,500 each, commencing July 1, 1958, the note stating that it was secured by mortgage of even date upon property located in Anderson Township, Hamilton County, Ohio. A mortgage was executed by Evwalt to Walter and Evelyn Kunz, covering the 47.17 acres of land described in the two deeds dated December 27, 1957, stating that if was to secure a note of even date for $115,500. Evwalt recorded on its books the note and mortgage for $115,500 as a real estate mortgage payable and the 47.17 acres of land was recorded on Evwalt's books as an asset showing a purchase price of $115,500, for which a note and mortgage had been given. The note and mortgage were recorded on the books of Walt Kunz Company as a note receivable. Evwalt's balance sheet as of December 31, 1957, showed the following assets and liabilities: Assets
Cash
$ 55.01
Inventory - Real estate for resale
299,099.55
Other assets
Deposits
7,400.00
Total assets
$306,554.56
Liabilities
Accounts payable
$ 55,772.75
Bonds, notes and mortgages pay-
able (maturing less than 1 year
from date of balance sheet)
120,550.00
Accrued interest
817.73
Bonds, notes and mortgages pay-
able (maturing 1 year or more
from date of balance sheet)
115,500.00
Capital stock
19,500.00
Earned surplus and undivided
profits (Deficit)
(5,585.92)
Total liabilities
$306,554.56
*296 The inventory account on Evwalt's books and records as of December 31, 1957, and the inventory shown on its balance sheet as of this date consisted of the land held by Evwalt including the entire Markley Road property. The two deeds from Walter and Evelyn Kunz to Evwalt conveying the Markley Road real estate were recorded December 31, 1957. A special meeting of the board of directors of Evwalt was held on April 12, 1958, to consider the uncancelled mortgage on the Markley Road property to August and Etta Bridges in the amount of $30,390. The mortgage was due April 19, 1958, and the attorney for August and Etta Bridges was unwilling to renew the mortgage or extend the time of payment because of the fact that Walter and Evelyn Kunz no longer held title to the 37.39 acres of land securing the mortgage. The attorney for August and Etta Bridges agreed to extend the mortgage for an additional 2 years from April 19, 1958, with interest at 5 percent per annum on the condition that Evwalt would execute and deliver to August and Etta Bridges its note secured by a mortgage on the 37.39 acres of land, which mortgage was to be a first mortgage on this land, and with Walter and Evelyn Kunz *297 subrogating their mortgage to the mortgage of August and Etta Bridges. Walter and Evelyn Kunz agreed to credit the amount of the mortgage given by Evwalt to August and Etta Bridges on the payment due July 1, 1958, on the note given by Evwalt to them. A resolution was passed authorizing Evwalt to execute and deliver to August and Etta Bridges its note in the amount of $30,390 with interest at 5 percent per annum payable 2 years from date secured by a mortgage on the 37.39 acres of land, and that the amount of such note be credited on the payment in the amount of $38,500 due July 1, 1958, on Evwalt's note to Walter and Evelyn Kunz. On April 18, 1958, Evwalt executed and delivered its promissory note in the amount of $30,390 to August and Etta Bridges and simultaneously executed its mortgage on the 37.39 acres of land to secure the payment of the note. The mortgage given by Evwalt to August and Etta Bridges was recorded on April 29, 1958, and on May 31, 1958, the original mortgage from Walter and Evelyn Kunz to August and Etta Bridges was cancelled. Walter and Evelyn Kunz never recorded the mortgage given to them by Evwalt. On July 1, 1958, when the first installment of the $38,500 *298 on Evwalt's note to Walter and Evelyn Kunz fell due, no portion of the difference between the $30,390 represented by the mortgage to August and Etta Bridges and the first installment of the note was paid to Walter or Evelyn Kunz by Evwalt, nor was any accrued interest on the installment paid by Evwalt, thus leaving the note in partial default as of that date. Evwalt was organized for the purpose of and was engaged in the business of developing raw undeveloped land into lots for home sites and selling such home sites. This development consisted of having engineers lay out the subdivision, showing lot sizes, streets and utility placements and having the utilities placed and streets and walks constructed in accordance with the engineering plans. Evwalt's normal pattern of activity was to have its land surveyed and plotted into lots and then enter into contracts with other businesses including Walter Kunz as an individual for the grading, leveling, construction and installation of streets, sewers, and water mains. Evwalt sold its lots singly or in groups. In one instance where Evwalt had four or five lots left in a subdivision, it hired a building contractor to erect homes on such lots *299 and then Evwalt sold lots with the homes erected thereon. Evwalt purchased the 47.17 acres of land on Markley Road for the purpose of developing this land into residential home sites and selling the lots so developed in accordance with its normal pattern of operations. Evwalt planned to develop the land in steps of a section at a time, the entire property to consist of four or five sections. Plans for the development of the first section were prepared by Evwalt to provide for 35 lots with the construction of certain roads. These plans designated as Evwalt Subdivision, Block D, were submitted to and approved by the City Planning Commission on May 12, 1958, and development authorized to proceed in accordance with the plan. On September 3, 1958, Evwalt and Walt Kunz Company made application to the Hamilton County Board of Commissioners for a permit to construct the physical improvements as shown on the subdivision improvement plans. Evwalt and Walter Kunz sought financing from third parties to provide the funds for the development of section one of the Markley Road property but ran into difficulty in obtaining such financing. On or about December 17, 1958, Allied Homes Development, *300 Inc., made an offer through Herman Weiss, a real estate broker, to purchase 41.1 acres of the Markley Road property in its undeveloped state for $160,000, terms of the payment to be $10,000 tendered with the offer, $40,000 cash at the closing of the transaction, and the balance by a note in the sum of $110,000, bearing interest at the rate of 5 percent and maturing on or before 1 year after the closing date not secured by mortgage upon the real estate. The note was to be signed by officers of Allied Homes Development, Inc., in lieu of a mortgage so that the purchaser might not be hampered in financing the development of the real estate. At a meeting of the board of directors of Evwalt held on December 23, 1958, for the purpose of discussing the offer of Allied Homes Development, Inc., to purchase this land, it was pointed out that there was a purchase money mortgage of $95,510 to Walter and Evelyn Kunz on this land in addition to the purchase money mortgage to August and Etta Bridges in the amount of $30,390, that the land was undeveloped and the corporation was receiving no income from it, that during the year 1958 building lot sites were not selling and the demand for building *301 lot sites in 1959 was not determinable, that the corporation was paying out interest and it would seem to be to the best interest of the corporation to sell the land, and that Walter and Evelyn Kunz were willing to accept the principal amount of their mortgage and accept a note in the amount of $7,285.45 with interest at 4 percent payable in 120 days in payment of the interest due on their note and mortgage and release their mortgage. Herman Weiss had agreed to reduce his commission on the transaction to $5,000. The board of directors adopted resolutions authorizing its president to accept the offer of Allied Homes Development, Inc., and to execute and deliver the corporation's deed of general warranty to that corporation and to execute and deliver to Walter and Evelyn Kunz a note in payment of interest due on the note to them of $115,500. On December 30, 1958, Evwalt deeded the 41.1 acres of land on Markley Road to Allied Homes Development, Inc. Evwalt discounted the note given it by Allied Homes Development, Inc., and received therefor $152,685.68, from which it paid the $30,390 mortgage to Agust and Etta Bridges plus $303.33 of accrued interest and paid to Walter and Evelyn *302 Kunz $95,510 which was shown as a balance of $85,110 due on Evwalt's note to them for the Markley Road property after crediting to this note the mortgage of $30,390 assumed by Evwalt to August and Etta Bridges and a $10,410 payment on the note given in partial payment for the Wolfangle Road property. The check to August and Etta Bridges was dated December 29, 1958, and that to Walter and Evelyn Kunz, dated December 31, 1958, and both of these payments were entered on Evwalt's books as of December 31, 1958. Evwalt executed a note in the amount of $7,285.45 to Walter and Evelyn Kunz for the interest due them on their note. Attached to the deed of Evwalt to Allied Homes Development, Inc., were documentary stamps in the amount of $168.30 indicating a sales price of $153,000. Herman Weiss, who submitted to Evwalt the offer of Allied Homes Development, Inc., to purchase the 41.1 acres of land was never employed by Evwalt and he never sold any property for Evwalt prior to December 17, 1958, and has sold no property for Evwalt subsequent to that date. Herman Weiss had been hired by Walter Kunz as an individual as leasing agent for one of his enterprises known as Anderson Hills Shopping Center. *303 Evwalt prior to December 30, 1958, had not sold any raw or undeveloped land and subsequent to that date has not sold any raw or undeveloped land. A small block of land in the Wolfangle Road tract and approximately 6 acres of the Markley Road property were already suitable for use as building lots at the time each such tract was acquired by Evwalt. Evwalt never advertised any portion of the 41.1 acres of undeveloped land which was sold to Allied Development, Inc., was the first and only offer Evwalt ever received for the 41.1 acres of the Markley Road property. The deed of Evwalt to Allied Homes Development, Inc., executed on December 30, 1958, contained 12 restrictive covenants, restricting the use of the land conveyed, which were the same restrictive covenants normally included by Evwalt in all of its deeds of undeveloped property. The remaining land in the Markley Road tract, consisting of the approximately 6 acres of developed land fronting directly on Markley Road was sold to purchasers other than Allied Homes Development, Inc. On their joint Federal income tax return for the year 1958, Walter and Evelyn Kunz reported a long-term capital gain of $63,830 on the sale to *304 Evwalt of the Markley Road property resulting from subtracting from a gross sales price of $115,500 a total basis for the two tracts comprising the Markley Road property of $51,670. On its Federal income tax return for the year 1958 Evwalt reported the sale of 41.1 acres of Markley Road property to Allied Homes Development, Inc., by using $85,158.45 as its cost basis of such 41.1 acres plus $5,000 as expense of sale. Respondent in his notice of deficiency issued to Walter and Evelyn Kunz determined that the payment of $115,500 reported by them as sales price of the Markley Road property actually constituted a dividend to them from Evwalt in the amount of $57,086.18 (on brief respondent reduced the amount claimed to constitute a dividend to $47,040.29) and eliminated from income the capital gain reported on the sale of the Markley Road property. In his notice of deficiency to Evwalt, respondent determined that the Markley Road property was a contribution to capital of Evwalt by Walter and Evelyn Kunz and as such had the same basis to Evwalt which it had in the hands of Walter and Evelyn Kunz, or $51,670. On its Federal income tax return for the taxable year 1958 Evwalt reported *305 its gain in the amount of $62,527.23 (resulting from a sales price of $152,685.68 less $90,158.45) as long-term capital gain. In his notice of deficiency respondent determined that Evwalt's gain on the sale of the 41.1 acres of Markley Road property was $96,015.68 resulting from $152,685.68 of sales price less $56,670 consisting of $51,670 basis of the property plus $5,000 of expense of sale, and that this gain represented ordinary income from the sale of property held for sale to customers in the ordinary course of Evwalt's trade or business. On its Federal income tax returns for the taxable years 1957 and 1958 Evwalt reported as ordinary income the gain on sale of all of its other real estate except the 41.1 acres of Markley Road property sold to Allied Homes Development, Inc. Opinion The first issue for decision is whether the conveyance by Walter and Evelyn Kunz of 47.17 acres of land referred to by the parties as the Markley Road property to Evwalt in return for a note and mortgage was in actuality a contribution by them to the capital of the corporation. It is respondent's position that this conveyance was in fact a contribution by Walter and Evelyn Kunz of their equity *306 in the property to Evwalt, that the payment on Evwalt's note to the Kunzes amounted to a dividend to them to the extent of the corporation's current earnings available for dividend, and that the corporation had the same basis in the property as that of Walter and Evelyn Kunz prior to the transfer. There is no question here with respect to the form of the instruments involved. Respondent recognizes that the conveyance by Walter and Evelyn Kunz to Evwalt was in the form of a sale of the property to Evwalt and that the note and mortgage given by Evwalt to Walter and Evelyn Kunz were in form the ordinary type of promissory note and ordinary type of mortgage used in the State of Ohio. The record also shows that the transaction was recorded on the books of Evwalt and on the books of Walter and Evelyn Kunz as a sale of property in return for a note and mortgage. It is respondent's position that in spite of the clear form of the transaction as a sale and the clear form of the note as an evidence of indebtedness secured by a mortgage in the customary form that the substance of the transaction was not a sale but was rather a contribution by Walter and Evelyn Kunz to Evwalt's capital. Respondent *307 contends that Walter and Evelyn Kunz did not intend to create a bona fide debt as between themselves and Evwalt, but intended to contribute their equity in the Markley Road property to Evwalt's capital with no expectation of repayment except upon the success of the corporate venture itself. Both parties recognize that the question here involved is one of fact. Gooding Amusement Co., 23 T.C. 408 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956), certiorari denied 352 U.S. 1031 (1957). The burden is, of course, upon petitioner to establish error in respondent's determination. There is no one factor which is determinative in resolving the question here presented, but each case must be determined by weighing the facts peculiar to it. There have been numerous decided cases involving whether purported sales of property or loans by stockholders in a closely held corporation were in fact contributions to capital and various criteria have been pointed out as guidelines *308 in determining whether the transaction is in substance what it purports in form to be. The name given to the instruments is not conclusive but is to be considered along with other facts. Presence or absence of a maturity date for the indebtedness, the right of the creditor to enforce the payment of principal and interest, participation in management, whether the creditor subrogates his debt to those of the other corporate creditors, whether the corporation is adequately capitalized, identity of interest between creditor and stockholders, whether the advance was at the time of the organization of the corporation, and the ability of the corporation to obtain loans from outside lending institutions, are all among the factors to be considered in determining the ultimate fact. O. H. Kruse Grain & Milling, 279 F. 2d 123 (C.A. 9, 1960), affirming a Memorandum Opinion of this Court; Wilbur Security Co., 31 T.C. 938 (1959), affd. 279 F. 2d 657 (C.A. 9, 1960); and Clyde Bacon, Inc., 4 T.C. 1107 (1945). In the application of these criteria, it is the intent of the parties which is determinative, but this intent must be gleaned from consideration *309 of all pertinent factors in the case. Isidore Dobkin, 15 T.C. 31, 33 (1950), affd. 192 F. 2d 392 (C.A. 2, 1951). Upon consideration of all the facts in the instant case, we conclude that the sale by Walter and Evelyn Kunz of the Markley Road property to Evwalt was a sale in substance as well as in form. This sale occurred approximately 14 months after Evwalt was incorporated. The note was payable in yearly installments without reference to corporate earnings and bore interest. The original capital of Evwalt, though not large in absolute amount, was not negligible, as was the situation in many of the cases relied upon by respondent, and was the amount which had been suggested to Walter Kunz by his accountant as being sufficient to commence the operations of that company. Walter and Evelyn Kunz had made a prior sale of land to Evwalt after its incorporation and Evwalt had been able to borrow money for development of the property upon a basis which gave the Kunzes reasonable assurance that the portion of the sales price taken by them in the form of a note from Evwalt would be paid. The facts also show that upon the conveyance to it of the Markley Road property, *310 Evwalt made an effort to obtain funds for development of the property similar to the successful efforts it had taken with respect to the property previously conveyed to it from Walter and Evelyn Kunz. When it was unable to obtain such financing but sold the major portion of the Markley Road property in an undeveloped state, it immediately paid the note due to Walter and Evelyn Kunz in full, except for interest for which it gave its note to Walter and Evelyn Kunz. It did not in any way prorate the payment to the Kunzes in proportion to the land sold to that retained. The mere fact that a sale is by a sole stockholder to his corporation and that the indebtedness created by such sale is large in proportion to the capitalization of the corporation is not sufficient in and of itself to conclude that the intent of the parties was to make a contribution to the capital. Sun Properties, Inc. v. United States, 220 F. 2d 171 (C.A. 5, 1955), and J. I. Morgan, Inc., 30 T.C. 881, 891 (1958), reversed on another issue, 272 F. 2d 936 (C.A. 9, 1959). Respondent *311 argues that the facts that the property was conveyed without a down payment, cf. Aqualane Shores, Inc., 30 T.C. 519 (1958), affd., 269 F. 2d 116 (C.A. 5, 1959), that Walter and Evelyn Kunz did not collect the July 1, 1958, installment due on their note in full, and that the mortgage was never recorded by Walter and Evelyn Kunz indicate that it was the intent of Evelyn and Walter Kunz to make a contribution to the capital of Evwalt and not a sale of the property. Under the circumstances of this case, these facts are not persuasive of an intention by Walter and Evelyn Kunz to make a contribution to Evwalt's capital as distinguished from a sale of property. The assumption by Evwalt of Walter and Evelyn Kunz's mortgage to the Bridges was in effect a down payment and in addition Walter and Evelyn Kunz were given a mortgage to secure their note. While the mortgage was not recorded by them and the reason for this may have been, as respondent contends, in order to facilitate Evwalt in the financing of development of the project, this fact is of little weight in determining the intent of the parties with respect to the indebtedness. When Evwalt sold property to *312 Allied Homes Development, Inc., the note given to Evwalt in partial payment for the property was not secured by a mortgage in order that the purchaser might not be hampered in financing development. The installment payment due on July 1, 1958, had been in partial default only 6 months when the note was paid in full. Respondent argues that the only probability of repayment of the note to Walter and Evelyn Kunz depended on Evwalt's success in selling the contributed real estate, itself. The facts show to the contrary. At the time of the contribution there existed a reasonable possibility that Evwalt might obtain financing for development of the property and make repayment or repayment in part to Walter and Evelyn Kunz from the funds so obtained and also a reasonable possibility that some repayment might have been made from sale of other developed lots if the market for the sale of such lots had remained good during 1958. Respondent recognizes that if the transfer of the Markley Road property by Walter and Evelyn Kunz to Evwalt is recognized as a bona fide sale, the basis of the property to Evwalt is $85,158.45 as shown by Evwalt on its income tax return for the year 1958. In view *313 of our holding that the conveyance of this property to Evwalt was a sale in substance as well as in form, we hold that the basis of this property to Evwalt was $85,158.45. The final issue to be decided is whether the gain of $62,527.23 by Evwalt on the sale of the 41.1 acres of property to Allied Homes Development, Inc., is ordinary income or capital gain. Section 1221 of the Internal Revenue Code of 1954 defines capital asset as property held by the taxpayer with certain exceptions, among which is property of a kind which would properly be includable in the inventory of the taxpayer if on hand at the close of the taxable year, or property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business. [1]
*314 Evwalt takes the position that since it was not in the business of selling raw undeveloped land but in the business of developing such land into home building sites and selling these lots, the 41.1 acres of land was not property of a kind properly includable in its inventory or held by it for sale to customers in the ordinary course of its trade or business. It is clear from the facts that this land was carried in Evwalt's inventory at December 31, 1957, that all of Evwalt's land was held for sale, although generally Evwalt did not offer a specific piece of property for sale to customers in the ordinary course of its trade or business until such property had been developed into building lots. Evwalt purchased the land with the intent of reselling it and was holding it looking toward developing it into lots for sale when it received an offer to purchase the land which was the first offer to purchase such land that it had received. Evwalt accepted this offer. It sold the land with a deed which contained the same covenants that were ordinarily contained in the deeds selling its lots. Although this was, as Evwalt contends, the only time it had sold undeveloped land, it was holding *315 this land at that time for sale in the ordinary course of its business of selling real estate to whatever customers wished to purchase it at a price Evwalt was willing to accept. This case is somewhat similar to James E. Kesicki, 34 T.C. 675 (1960), in which we stated, "The character of the property was not changed by the failure to carry out the original plan." Evwalt acquired the property here in connection with its business and after acquiring the property took steps towards developing a portion of it but was unable to proceed with that development because it ran into difficulty obtaining financing. Evwalt was still holding the property for sale at the time it received the offer from Allied Homes Development, Inc., to purchase the unimproved land, and the fact that it did not carry out its original plan of developing the property into home sites did not change the character of the property. Cf. Donald J. Lawrie, 36 T.C. 1117, 1121 (1961). We sustain respondent in his determination that the gain received by Evwalt from the sale of 41.1 acres of the Markley Road property to Allied Homes Development, Inc., was ordinary income. Decision will be entered *316 under Rule 50. Footnotes
1. Sec. 1221 (I.R.C. 1954) CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩