**AQUALANE SHORES, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 17605.

United States Court of Appeals
Fifth Circuit.

Aug. 13, 1959.

Rehearing Denied Sept. 11, 1959.

William A. Sheppard, Jr., William A. Sheppard, Fort Meyers, Fla., for petitioner.

Grant W. Wiprud, Harry Baum, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., John M. Morawski, Sp. Atty., I. R. S., Arch M. Cantrall, Chief Counsel, I. R. S., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for respondent.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Messrs. Walker, father and two sons, were landscaping and grading contractors as a partnership in the name of Walker Construction Company. In May of 1949 the partners acquired approximately 175 acres of land at Naples, Florida, at a price of something more than $69,000. Purchase money mortgages were given for a substantial portion of the price. In December of 1949 the Walkers caused the taxpayer, Aqualane Shores, Inc., to be incorporated under the laws of Florida. On January 10, 1950, the organization meeting of the incorporators was held. Ten shares of stock were issued to each of the three Walkers for $320 per share. Simultaneously the Walkers conveyed the land, except a few lots sold by the partnership, to the corporation. An agreement was executed at the same time between the Walkers and the corporation in which it was stated that the consideration for the transfer was $250,000, of which $9,000 was cash paid, an unpaid amount of $49,128.-88 on the mortgages was assumed, leaving a balance of $191,871.12. The agreement then provided:

"3. The unpaid balance of $191,-871.12 shall be paid by the Purchaser to the Sellers in five equal annual installments, the first installment becoming due January 10th, 1951. Unpaid balances of principal shall bear interest from January 10th, 1950, at the rate of 4% per annum, payable annually on the anniversary of principal installments.

"4. The Purchaser will (a) make all payments of principal and interest on said five mortgages promptly when the same shall become due; (b) pay all taxes and assessments levied against the land for the year 1950 and subsequent years before the same shall become delinquent; and (c) as to the balance of the sales price—$191,871.12—, pay all principal installments, with interest, promptly when the same shall be due. And should the Purchaser in anywise fail in any of these respects

for a period of 60 days, the Sellers may, at their option, declare any sums of money owing to them hereunder to be forthwith due and payable."

The land was, for the most part, mangrove swamp. It was the plan of the Walkers to develop the property as a residential subdivision by dredging canals and using the spoil to increase the elevation of the remaining property, thus converting the unusable swamp into desirable waterfront property. The Walkers originally contemplated doing the development work as a partnership and the work was underway before the conveyance to the corporation was made. The income tax return of the partnership reported the transfer to the corporation as an installment sale which resulted in a long-term capital gain. The corporation borrowed money and gave mortgages as security. Forrest Walker, the father, made two unsecured loans, each in the amount of $10,000, to the corporation.

During the years 1950, 1951, and 1952, the taxpayer's income tax returns computed gains from the sales of lots on the basis of an overall land cost of $250,000. The Commissioner of Internal Revenue determined that the basis of the property to the corporation taxpayer was $69,291, the same as the basis of the Walkers. Deficiencies resulting from the Commissioner's determination of the taxes were assessed. The Tax Court sustained the Commissioner. Aqualane

Shores, Inc. v. Commissioner, 30 T.C. 519. The Tax Court found that, aside from the tax advantages to be gained, the principal purposes for incorporation were to facilitate the raising of capital and to expedite and simplify the processes incident to sales. It assumed, from the evidence, that the property when acquired by the corporation had a fair market value of approximately $250,000. After finding that the exchange of checks between the partnership and the corporation was a wash-out transaction, the Tax Court concluded that the January 10th, 1950, transaction did not create a bona fide debtor-creditor relationship between the corporation and the Walkers, and that the transfer was, in substance, a transfer of land solely in exchange for stock of the taxpayer and is governed by the provisions of Section 112(b) (5) of the Internal Revenue Code of 1939.[1] From this it followed, and the Tax Court so held, that the basis to the corporation is the same as the basis to the Walker partnership prior to the exchange pursuant to Section 113(a) (8) of the Internal Revenue Code of 1939, 26 U.S.C.A. (I.R.C.1939) § 113(a) (8). From the decision of the Tax Court, entered in accordance with its opinion, the taxpayer corporation has appealed.

The corporation started in business with the land acquired from the stockholders and six hundred dollars in money, or such part of that sum as may have remained after the payment of its or-

---

1. "§ 112. Recognition of gain or loss.
   "(a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.
   "(b) *Exchanges solely in kind*—
   \*        \*        \*        \*        \*
   "(5) *Transfer to corporation controlled by transferor.* No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this

paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under subsection (k) it is not to be considered as 'other property or money') shall be considered as stock or securities received by such transferor." 26 U.S. C.A. (I.R.C.1939) § 112(a), (b) (5).

ganization expense. The agreement between stockholders and corporation showed a corporate indebtedness for purchase money of $241,000 which was more than 96% of the recited purchase price of the land. Its equity was narrowly margined and its working capital was practically nil. Its only asset was an area of mangrove swamp. The only source from which the corporation could expect revenues was from the sale of lands. Only a very small part of the land had been cleared and filled. It was of a kind and character that required the expenditure of substantial amounts of money in order to put it in marketable condition. Funds for this purpose were borrowed. No payments of principal or interest were made by the corporation to the Walkers during the years 1951 through 1954, except a payment or credit of $8,000 made in 1950 upon the 1951 installment.

The taxpayer corporation relies heavily upon the opinion in Sun Properties, Inc. v. United States, 5 Cir., 1955, 220 F.2d 171, as being "on all fours" with its case. In the Sun Properties case the taxpayer was incorporated by the owner of property to whom three shares of one dollar par value stock were issued. The transferor then transferred to the corporation a warehouse building for a recited consideration of $125,000 payable in semiannual installments of $4,000. At the time the sale was made the operation of the warehouse was very profitable. During the year in which the sale was made the net profits from operation of the warehouse were in excess of $21,000. The district court sustained the Commissioner's determination that the transfer of the property was not a sale but a contribution to capital. This Court concluded that there was no evidence that the transfer of property was a contribution to capital or intended as such. In the opinion which is here under review the Tax Court noted:

> "We are not unmindful of the fact that some parts of the reasoning and language in Sun Properties, Inc. v. United States, supra, appear

to be inconsistent with the result which we have reached here. However, it is axiomatic that each case of the type considered here must be decided on its peculiar facts. In our opinion the facts of the instant case, considered in their entirety distinguish it from the case of Sun Properties, Inc., and bring it within the ambit of the opinions of this Court and of the various Courts of Appeals which we have heretofore noted."

■■ As this Court noted in its opinion in the Sun Properties case [220 F.2d 175], "Evidence which may tend to prove that a transaction was a contribution to capital may be of many sorts". Cf. Rowan v. United States, 5 Cir., 1955, 219 F.2d 51. The taxpayer corporation, Aqualane Shores, Inc., after its exchange of checks with its incorporating stockholders had $600 of operating funds. Payment of what it had agreed to pay for the undeveloped land which the corporation had acquired could be made only if and when sales of the land were made and proceeds of such sales were received. The controlling consideration in determining whether the obligations of a corporation given by it as the recited consideration for the transfer of property are to be regarded as representing purchase money or as a security received in a Section 112 exchange "is an overall evaluation of the nature of the debt, degree of participation and continuing interest in the business, the extent of proprietary interest compared with the similarity of the note to a cash payment, the purpose of the advances, etc." Camp Wolters Enterprises, Inc. v. Commissioner, 22 T.C. 737, affirmed 5 Cir., 1956, 230 F.2d 555, certiorari denied 352 U.S. 826, 77 S.Ct. 39, 1 L.Ed.2d 49. The payment of obligations of the corporation to its transferors, the stockholders of the corporation, was dependent upon and at the risk of the success of the venture. The obligations were a participation in the pot luck of the enterprise. Camp Wolters Enterprises, Inc. v. Commissioner, supra. The contract and the obligations of it are, we think, "securities" of the

corporation within the meaning of the statute, 3 Mertens Law of Federal Income Taxation, Ch. 20, p. 119, § 20.47. The Tax Court, after considering all of the factors, reached the conclusion that "there was in substance an exchange by the partners of property in return for a proprietary equity in the corporation equivalent for tax purposes (which are concerned with economic realities) to a transaction covered by the provisions of Section 112(b) (5)."

In the Sun Properties case the income from the property transferred was such as to require the conclusion that the obligation could be paid from it leaving the capital assets unimpaired. Here the property was not income producing and required expenditure of development costs to make it subject to profitable sale. The contract obligations clearly represented risk capital. The applicable precedent is to be found in Camp Wolters Enterprises rather than in Sun Properties. The decision of the Tax Court is correct. Its judgment is

Affirmed.