**O. H. KRUSE GRAIN & MILLING,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16663.

United States Court of Appeals
Ninth Circuit.

May 27, 1960.

Enger & Yardum, LeVone A. Yardum, Beverly Hills, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Lloyd J. Keno, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES and MERRILL, Circuit Judges, and BOWEN, District Judge.

BARNES, Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency in petitioner grain company's returns for the years 1952 and 1953. Petitioner filed a petition for redetermination of the deficiency with the Tax Court under Title 26 U.S.C. § 6213. The Tax Court sustained the deficiency in part and disallowed it in part. From that decision petitioner seeks review under Title 26 U.S.C. § 7482.

Petitioner corporation claimed deductions from net income for the years 1952 and 1953 for certain items of *interest* and *rent* owing to its sole proprietor. The Commissioner determined (a) that the *interest* was not due on a bona fide debt, nor (b) was it paid within two and one-half months of the next tax year, as required by § 24(c) of the Internal Revenue Code of 1939. The Tax Court found that the interest was not due on a bona fide debt, and did not reach the § 24 (c) problem. The Commissioner determined that the *rents* were not paid within the requisite two and one-half months as required by § 24(c), and disallowed the rental deductions on that basis alone. The Tax Court determined that the amounts deducted for rentals had been constructively received by the corporation's sole owner during the taxable years, hence § 24(c) was not applicable, and the deficiences as to the rentals were disallowed.

O. H. Kruse had been in business for fourteen years when he formed the petitioner corporation in 1950. The corporation has an authorized capital stock of $300,000; 3,000 shares of $100 par value. In April 1950 Kruse transferred to petitioner, in exchange for 800 shares of stock, certain office equipment, trucks, machinery and current assets, of a value of $9,000. In June 1950, Kruse transferred to the corporation the following assets:

| | |
|---|---|
| Accounts receivable | $139,506.62 |
| Merchandise inventory | 37,724.59 |
| Cash | 41,348.08 |
| | $218,579.29 |

Kruse accepted in payment therefor a promissory note of the corporation in the principal amount of $200,000, and a drawing account was opened in his favor for the balance.

The note was payable "On or before December 31, 1950, or thereafter on Demand" and bore interest at the rate of six per cent "from January 1, 1951 until paid, interest payable semi-annually." No interest was actually paid until September 1953 when $2,000 was paid. Payments on principal were made as follows:

| | |
|---|---|
| November 1, 1955 | $100,000 |
| April 12, 1957 | 20,000 |
| October 22, 1958 | 80,000 |
| | $200,000 |

No payments on principal were made until a revenue agent questioned the transaction. The corporation deducted the following amounts for interest:

| | |
|---|---|
| 1950 | $ 9,000 |
| 1951 | $12,000 |
| 1952 | $12,000 |
| 1953 | $12,000 |

O. H. Kruse reported the following amounts in his personal return as income from interest from the corporation during the same years:

1950   None
1951   None   (petitioner reported $21,000 rent received, although but $12,000 rent was due that year)
1952   $ 6,000   (no interest actually paid)
1953   $12,000   ($2,000 actually paid)

The corporation was to receive credit for any amounts paid to Kruse, first on accrued interest, then accrued rent, and then on the drawing account.

In November of 1951, Kruse signed an agreement subordinating the "debt" to any amounts owing on a $100,000 line of credit which was established with the Bank of America. We note the debt was not subordinated at the time it was made, and that it was not subsequently subordinated to the debt of a *general* creditor.

At the trial the only testimony offered by appellant was that of the accountant who had made out the returns of both the corporation and Kruse. The accountant was assistant secretary of the corporation and spent three days a month on the books of the corporation. Kruse himself, though available, did not testify. The essence of the Tax Court's opinion was that petitioner had failed to sustain the burden of showing that the Commissioner's determination was erroneous. He found there was no showing that the debt was one which was intended to be repaid. The court laid stress on the fact that the best evidence as to this would have been the testimony of Kruse to the effect that this was the intent with which the transaction had been entered into. Since Kruse did not testify, the court drew the inference that his testimony would have been unfavorable to the petitioner's position. Besides holding that the petitioner failed to sustain his burden of proof, the Tax Court relied on the following factors to buttress its conclusion:

1. The note was in essence a demand note without fixed maturity date.

2. The note was subordinated to another major creditor after it was made.

3. There were accounting "mistakes," which could give rise to the inference that the note was not regarded as a debt. This was given added weight by the fact that no attempt was made to explain the erroneous entries except to characterize them as "mistakes."

4. No payments were in fact made on the principal until the revenue agent questioned the transaction.

■ At the outset it must be recognized that the finding that the note in fact constituted a capital investment was one of fact, and not subject to overthrow by us unless the finding was clearly erroneous. E. g. Earle v. W. J. Jones & Son, 9 Cir., 1952, 200 F.2d 846, 847.

Petitioner specifies no error, but cites as the "issue to be decided" whether the note was intended to be a bona fide indebtedness or a contribution to capital. This would seem to pose to us merely the factual issue decided adversely to petitioner by the Tax Court.

Petitioner's brief does no more than cite cases to show that each of the alternate supporting reasons given by the Tax Court in a given situation may not be decisive of the question. With this we readily agree. Aside from this negative approach, petitioner argues that the evidence of the transaction was "in debt form." This, of course, is technically true of any use of promissory notes to obtain invested capital. Appellant ignores the important factor of demonstrating to this court that it did in fact carry the burden of proof in the lower court.

■ There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) par-

126

ticipation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions.

Here the maturity date was certain only to the extent it was *after* January 1, 1951; thereafter it was uncertain, so long as the principal stockholder held the note. There was no evidence of enforcement of the payment of interest. The holder participated in the management. The status was originally superior, and subsequently made inferior to that of regular corporate creditors. This subordination existed most of the time the note was outstanding. The intent of the parties, by the failure of Mr. Kruse to take the stand, was only partially explained. There was a decided, in fact, a 100% identity of interest between noteholder and stockholder, who with his wife, owned 100% of the stock. Although the corporation paid its other obligations promptly, it made no payment on the principal of this "demand" note for over five years and four months, and then only after its authenticity was questioned.

There was no proof of any business reason requiring the second amounts advanced by the sole stockholder to the corporation to be represented in any other form other than they were when the corporation was first organized, i. e., in stock.

■ While there is nothing in the record to indicate that any attempt was made to finance this loan elsewhere, we can take judicial knowledge of the fact that very few financial institutions would (a) lend $200,000 to any corporation for six and one-half months on an unsecured note without interest; or (b) fail to require interest payments on such a loan for over three years.

Furthermore, the casual assertion that the bookkeeping errors were merely "mistakes" carries little weight where, for example, (a) the corporation deducted, but did not pay, interest in 1950 and 1951; (b) Kruse on his personal tax return during these same years reported no interest paid or accrued to him by the corporation; (c) the corporation deducted $12,000 as accrued interest in 1952, but Mr. Kruse reported but $6,000 in 1952; (d) the corporation, not liable to pay any interest on the note under its terms in 1950, nevertheless accrued and deducted $9,000 as interest. This amount was even greater than the six per cent interest later to be due under the note's terms.

We have read with interest the cases cited by the government which hold that each of the factors considered will tend properly to show the lack of intent that the advance of assets was to be considered a loan, as well as cases supporting the right of the Tax Court to draw an inference from the silence of the petitioner's sole stockholder and principal officer. E. g., Mammoth Oil Co. v. United States, 1927, 275 U.S. 13, 52, 48 S.Ct. 1, 72 L.Ed. 137; Shaw v. Commissioner, 6 Cir., 1958, 252 F.2d 681.

On the other side of the ledger, and favoring the taxpayer's interpretation, we find the use of the form of a promissory note alone.

We treat as neutral factors the corporate failure to pay any dividends; the source of the principal payments made on account; and the extent of the capitalization.

■ But while we are convinced that the decision of the Tax Court is amply supported by a preponderance of the evidence, we do not reach that problem. It is our duty merely to determine whether the finding below, made on disputed facts, is clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C.A. Gooding Amusement Co. v. Commissioner, 6 Cir., 1956, 236 F.2d 159; Earle v. W. J. Jones & Son, supra. We hold it clearly was not.

The judgment of the Tax Court is Affirmed.