**MONTCLAIR, INC., Petitioner,**
**v.**
**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**
**No. 19769.**

United States Court of Appeals
Fifth Circuit.
May 22, 1963.

James R. Harper, Cuba, Harper & Cuba, Atlanta, Ga., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Crane C. Hauser, Chief Counsel, I. R. S., Earl J. Silbert, Atty., Dept. of Justice, Glen E. Hardy, Atty., I. R. S., David O. Walter, Richard M. Roberts, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before JONES and BELL, Circuit Judges, and GROOMS, District Judge.

JONES, Circuit Judge.

The Tax Court, in a decision upholding the Commissioner of Internal Revenue in his determination of income tax deficiencies for 1955, 1956 and 1957, decided that deductions claimed as interest by the taxpayer corporation were, in fact, dividends on risk capital. The taxpayer, Montclair, Inc., is a Georgia corporation organized in 1944. It issued ten shares of common stock of the par value of $100 per share, of which three shares were issued to M. F. Brice, two shares to his wife, Margaret T. Brice, three shares to

Dewey Scarboro, and two shares to his wife, Grace J. Scarboro. One hundred shares of Class A Preferred stock were issued to Federal Housing Administration. One hundred shares of Class B Preferred stock were issued, fifty shares to Mrs. Brice and fifty shares to Mrs. Scarboro. Montclair constructed and operated a fifty-unit apartment project in Atlanta, Georgia. The construction was financed by funds borrowed by Montclair from Brice Banking Co., of Vidalia, Georgia. Three hundred fifty shares, of the five hundred shares of the bank outstanding, were owned by M. F. Brice. Its loan to Montclair was secured by a security deed. The loan was insured by the Federal Housing Administration and the Class A stock was issued in connection with this transaction.

In 1945, or early in 1946, the Federal Deposit Insurance Corporation directed that the Brice bank get rid of the Montclair loan. M. F. Brice undertook to arrange for refinancing. The F.H.A. insurance terminated on June 1, 1946. The Class A stock was surrendered to Montclair. The First National Bank of Atlanta, Georgia, on June 27, 1946, loaned Montclair $150,000, taking a deed of trust on the apartment property as security. On July 1, 1946, the Citizens & Southern Bank of Savannah, Georgia, loaned M. F. Brice $170,000 secured by a pledge of United States Treasury bonds. The proceeds of this loan were made available to Montclair. The security deed to Brice Banking Co. was satisfied on July 2, 1946. On August 1, 1946, the Scarboros transferred their Montclair stock, common and preferred. In 1947, M. F. Brice and Margaret T. Brice endorsed their Montclair stock certificates in blank and turned them over to the Company. Certificates were issued to Tanner H. Brice, son of M. F. Brice, for five shares of common stock, fifty shares of Class A Preferred stock and fifty shares of Class B Preferred stock. Certificates for a like number of each class of stock were issued to Margaret B. Ladson, daughter of M. F. Brice. The certificates of Tanner H. Brice were issued on January 1, 1947. There may be a question as to whether the certificates of Mrs. Ladson were issued on January 1, 1947, or July 1, 1947, but it seems unimportant.

Other loans were made over the years by the First National Bank of Atlanta, sometimes upon the security of the apartment property and usually endorsed by M. F. Brice. The last maturing of these obligations was paid on January 31, 1949. On April 30, 1949, Coastal States Life Insurance Co. loaned Montclair $125,000, which was repaid on April 17, 1950. On December 27, 1950, Coastal States loaned Montclair $94,520, of which only $1,000 was unpaid on December 31, 1956. These obligations were secured by deeds of trust on the apartments. In 1948, M. F. Brice made a financial statement to the First National Bank of Atlanta on which he stated that he owned 100 per cent. of the stock of Montclair. M. F. Brice was the president of Montclair and controlled its affairs and activities.

In its income tax returns for 1955, 1956 and 1957, Montclair showed indebtedness to officers, meaning M. F. Brice, in the respective amounts of $238,872.41, $224,987.62, and $225,248.24, and debts to others at the close of the same years amounting to $16,431.51, $16,431.51, and $1,000. The capital stock was shown, during this period, as $11,000. Interest deductions were claimed in the amounts of $14,998.23, $14,695.34 and $13,593.67 on the returns for the years mentioned. Like amounts were reported as interest income by M. F. Brice during the several years. These interest deductions were six per cent. of the amount shown as due officers at the beginning of each tax year. During these years Montclair paid M. F. Brice the sum of $20,229, $30,557, and $32,373. For these years Montclair returned taxable income in the amounts of $1,351.97 for 1955, $3,440.56 for 1956, and $4,897.77 for 1957. The disallowance of the claimed deductions resulted in deficiency assessments of $4,010.14 for 1955, $4,435.81 for 1956, and $4,067.99 for 1957. M. F. Brice, who, at all times here material, had been the president and

in control of the management of Montclair, died before its tax case came on for trial before the Tax Court. Tanner H. Brice, who had been secretary of Montclair, became its president upon his father's death.

At the trial Tanner H. Brice testified that he had an oral agreement with his father that Montclair would pay all of the income above operating charges to the father for interest and principal. There was no fixed maturity for any portion of the so-called debt so that there could be no default. The interest rate was not agreed upon except as to the prevailing rate. There was no written obligation to evidence an indebtedness. The Brice debt, so called, was frequently subordinated to loans made by banks to Montclair. The Tax Court reached the conclusion that the funds advanced to Montclair by M. F. Brice were risk capital rather than loans and sustained the Commissioner in disallowing deductions for the payments claimed as interest. We find no error in the Tax Court's conclusion.

■ The criteria to be considered in determining questions such as this case poses have been thus stated:

"There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions." O. H. Kruse Grain & Milling Co. v. Commissioner, 9th Cir., 1960, 279 F.2d 123, 125. See Mertens Federal Income Taxation § 26.10c.

This Circuit has rejected the notion that thin capitalization alone will justify the Commissioner in designating an indebtedness as capital, but recognizes that this factor need not be ignored in determining whether all of the facts authorize the inference of an intent to make a contribution to capital. Rowan v. United States, 5th Cir., 1955, 219 F.2d 51. Evidence which may tend to prove that a transaction was a contribution to capital may be of many sorts. Sun Properties v. United States, 5th Cir., 1955, 220 F.2d 171; Aqualane Shores, Inc. v. Commissioner, 5th Cir., 1959, 269 F.2d 116. No comprehensive rule can be stated which will be applicable in all cases. Commissioner v. T. R. Miller Mill Co., 5th Cir., 1939, 102 F.2d 599.

■ Montclair contends that M. F. Brice gave away his stock and was only a creditor of Montclair during the tax years involved. The Tax Court expressed a doubt as to there having been a gift of the stock by M. F. Brice to his children. The doubt was not resolved by the Tax Court and it is not necessary that we consider it. He was a stockholder when the advances were made and continued to exercise the exclusive control of the corporation, and its net earnings came into his hands. The Tax Court summarized in this manner, "There was no formal evidence of indebtedness, no fixed maturity date, claimed 'repayments and interest' came solely from net earnings, there was no right to enforce payment of interest or principal if opposed, M. F. Brice effectively managed petitioner at all relevant times, and payments to him were subordinated to regular corporate creditors. It is our view, from the entire record, that the claimed interest deductions must be disallowed." With this conclusion we are in accord. The decision of the Tax Court is

Affirmed.