**ARONOV CONSTRUCTION COMPANY, Inc., formerly Acme Builders, Inc., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1810-N.**

United States District Court
M. D. Alabama, N. D.

Oct. 9, 1963.

Hugh F. Culverhouse, Jacksonville, Fla., for plaintiff.

Ben Hardeman, U. S. Atty., Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., and Edward S. Smith, John F. Murray, and Hubert M. Doster, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

JOHNSON, District Judge.

This is an action brought against the United States to recover income taxes in the amount of $7,724.71, plus interest, the tax having been paid by Aronov Construction Company, Inc., formerly Acme Builders, Inc., for the fiscal years ending March 31, 1957 and March 31, 1958. The case is now submitted upon the pleadings, the stipulations of the parties, the evidence heard orally, the several exhibits to the testimony, and the briefs and arguments of counsel. Upon this submission, this Court now proceeds, in this memorandum opinion, to make the appropriate findings of fact and conclusions of law.

Pursuant to the stipulation by the parties, the only issue to be decided in the case is whether amounts accrued and deducted as interest by the plaintiff during the fiscal years 1957 and 1958 constituted deductible interest on indebtedness within the meaning of § 163 of the Internal Revenue Code of 1954,[1] or nondeductible dividend distributions to the shareholders of the plaintiff.

1. Internal Revenue Code of 1954 (26 U.S. C.A.1958 Ed. § 163):
"§ 163. Interest
"(a) *General rule.*—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

The plaintiff-taxpayer was incorporated on February 28, 1952, with a total paid-in capitalization of $1,000. The plaintiff, Aronov Construction Company, Inc., is the legal successor of Acme Builders, Inc., and is a corporation incorporated in and doing business in the State of Alabama with its principal place of business in Montgomery, Alabama. The stockholders were, at all times material to this litigation, comprised entirely of members of the Aronov family. The purpose of the corporation was to own real estate upon which a building was to be constructed and leased to the General Services Administration.

Aronov Brothers—a partnership organized in 1949—since its organization to the present, has had as partners Aaron Aronov, Hilliard Aronov and Herman Aronov, each of whom has a one-third interest in the partnership. Jake Aronov—a partnership organized in 1950—since its inception to the present, has had as partners Aaron Aronov, Hilliard Aronov, Herman Aronov, Thelma Aronov Mendel and Nora Aronov, each of whom has a one-fifth interest in the partnership. In 1950 the Aronov Brothers' partnership and the Jake Aronov partnership acquired real estate which was transferred on May 9, 1952, to the taxpayer from these two partnerships. The land transferred to taxpayer was valued at $70,000. At the time of the transfer of this land, the assets of the taxpayer consisted of a lease contract with the General Services Administration and $1,000 paid-in capital. The transfers were in the form of sales agreements, with the shareholders of the taxpayer receiving mortgages and notes in exchange for the property transferred. No down payment was made on the properties until May 30, 1952, and the mortgages were not recorded until November 1952.

On the same date of the property transfer, May 9, 1952, the taxpayer executed a note and mortgage on the same property in the amount of $150,000 to the First National Bank of Montgomery, Alabama, as security for a construction loan. On this same date, the shareholders of the taxpayer entered into a written agreement, subordinating their interest in the property to the bank. In addition, the bank loan was personally guaranteed by the three principal shareholders of the taxpayer. Subsequently, and upon completion of the building on the property, a new mortgage and note were executed by the taxpayer, in the amount of $150,-000, in favor of the Mutual Life Insurance Company. At the same time, the mortgage to the bank was satisfied. Again the shareholders of the taxpayer subordinated their interest—this time to the Mutual Life.

When the payments became due during 1952 and again in May 1953 on the shareholders' transaction, no principal or interest payments were made. The taxpayer entered into written agreements with the Jake Aronov and the Aronov Brothers' partnerships to delay the payments. During this time the taxpayer annually accrued and deducted interest on the "indebtedness" due the partnerships. It is significant to note that at no time material to this case did the taxpayer declare or pay a dividend to its shareholders; as a matter of fact, no cash dividend has ever been declared or paid by it. However, the taxpayer (commencing January 1954 through July 1958) has completed payment of interest and principal due on the notes issued to each partnership.

The taxpayer filed timely income tax returns for the fiscal years in question. However, following an examination of those returns by the Commissioner of Internal Revenue, there was made against taxpayer an additional assessment of tax and interest. This deficiency was paid, timely claim for refund was made with respect to this tax and interest, and the refund was disallowed and rejected on December 4, 1961. This action was then timely instituted.

This Court concludes that it has jurisdiction of this cause and the parties hereto. This Court further concludes that the law and the facts are against the plaintiff and with the defendant and that a judg-

ment should be entered in this case in favor of the defendant.

To qualify for a deduction from gross income for "interest" under § 163 (a) of the Internal Revenue Code of 1954, the "interest payment" must represent the amount which one has contracted to pay for the use of borrowed money. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416. The transaction must involve a true debtor-creditor relationship. From the evidence in this case, this Court is forced to the conclusion that the notes issued by this plaintiff to the Jake Aronov partnership and the Aronov Brothers' partnership did not create an "indebtedness" within the meaning of the applicable statute. The transaction in question was nothing more than a capital transfer to the taxpayer-corporation, with the transferring-shareholders, in reality, participating in the corporate enterprises. Aqualane Shores, Inc. v. Commissioner, 5 Cir., 269 F.2d 116; Camp Wolters Enterprises, Inc. v. Commissioner, 5 Cir., 230 F.2d 555. The reasons for the decision of this Court that the transaction in question was nothing more than a capital transfer as opposed to a bona fide indebtedness within the meaning of § 163(a) is made abundantly clear by an application of the criteria of Montclair, Inc. v. Commissioner (5th Cir., May 1963), 318 F.2d 38, to the facts of this case. As the Court said in that case:

"The criteria to be considered in determining questions such as this case poses have been thus stated:

" 'There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in man-

agement; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions.' O. H. Kruse Grain & Milling Co. v. Commissioner, 9th Cir., 1960, 279 F.2d 123, 125. See Mertens Federal Income Taxation § 26.10c."

Applying these criteria to the facts in this case, it very readily appears that (1) the payment schedule to the transferring shareholders was ignored; (2) the sole source of the scheduled payments was to have come from the rents under a one-year lease; (3) the Aronovs had complete control and management of the corporation; (4) the stockholders agreed that their "debt" be subordinated to those of other creditors; (5) the capitalization of the corporation was inadequate; (6) there was complete identity between the "creditors" and stockholders, and (7) no dividends were declared by the taxpayer. It thus becomes apparent that the real function of the transaction in question was to allow the corporation to distribute its earnings over a period in the form of deductible interest payments rather than dividends. Consequently, the payments made by the taxpayer under these "notes" were not "interest" within the meaning of § 163(a), and the plaintiff is not, therefore, entitled to the requested refund.

In accordance with the foregoing, it is, therefore, the order, judgment and decree of this Court that the plaintiff, Aronov Construction Company, Inc., have and recover nothing of the defendant, United States of America.

It is further ordered that the costs incurred herein be and they are hereby taxed against the Aronov Construction Company, Inc., for which execution may issue.