Melville D. Frank and Augusta Frank v. Commissioner.
Frank v. Commissioner
Docket No. 4951-63.
United States Tax Court
T.C. Memo 1965-187; 1965 Tax Ct. Memo LEXIS 142; 24 T.C.M. (CCH) 979; T.C.M. (RIA) 65187; July 9, 1965
I. Charles *143 Rhoads, 150 E. Broad St., Columbus, Ohio, for the petitioners. Richard M. Schwartz, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioners for the year 1961 in the amount of $2,078.48 and additions to tax under sections 6651(a) and 6654, Internal Revenue Code of 1954, in the respective amounts of $103.92 and $88.64. The issues for decision are: (1) Whether the petitioner Melville D. Frank is entitled to deduct as a business bad debt under section 166(a)(1), Internal Revenue Code of 1954, advances in the amount of $6,596.83 made by him to his wholly-owned corporation, National Allied Underwriters, Inc.; and (2) whether petitioners are liable for the penalties under sections 6651(a) and 6654. All of the facts were stipulated by the parties and are hereby found accordingly. Melville D. Frank and Augusta Frank are husband and wife, who reside at 793 Kenwick Road, Columbus, Ohio. For the taxable year 1961 they reported income on the cash basis and filed their Federal income tax return with the district director of internal revenue, Cincinnati, *144 Ohio. The Franks are the sole owners and operators of the Frank Insurance Agency and have conducted a general insurance business for over 25 years. On May 24, 1960, Melville D. Frank (hereafter called petitioner) formed an Ohio corporation known as National Allied Underwriters, Inc. (hereafter called National), and made an initial capital contribution to it of $500. In return, petitioner received all of the outstanding stock of National. National was organized for the purpose of obtaining an additional general agency for placing high-rated, substandard or rejected life insurance risks with the Security Benefit Life Insurance Company of Topeka, Kansas. The petitioner, as an individual, could not place the risks written by National under the existing policies of Security Benefit Life Insurance Company. In actual operation, National functioned merely as a division of the Frank Insurance Agency and its corporate activities were conducted in conjunction with and as a part of the Frank Insurance Agency. Physical facilities and personnel were used jointly by both. In the taxable year ended December 31, 1960, National reported gross income of $316.93 and business expenses of $4,498.52. *145 For the taxable year ended December 31, 1961, National reported gross income of $3,713.61 and business expenses of $6,628.85. On December 31, 1961, after suffering losses in both of these years, National was dissolved. Upon dissolution all of National's debts to outside creditors were satisfied in full. During 1960 and 1961, in addition to the original capital stock investment of $500, petitioner made numerous advances to National in the amount of $6,596.83. These advances were made as needed by National in order to meet its current operating expenses and to satisfy specific obligations during the 2 years of its operation. These advances were used to pay salaries and meet necessary expenses for legal and promotional fees, supplies, telephone, rent, postage, commissions, and other miscellaneous items. National did not execute or issue any promissory notes, certificates, or other evidences of indebtedness to indicate that it was indebted to the petitioner for these advances. Petitioner never received any security to guarantee the repayment of the advances nor did he ever demand repayment. No interest was charged on the advances and none was ever paid. No definite time or date was *146 set for the repayment of any part of the advances nor were any repayments, in fact, made. Petitioner never instituted suit or took any other legal action to enforce payment of any part of the advances made to National. National never made any effort to borrow money from sources other than the petitioner. Petitioner is neither in the business of organizing, promoting, managing, or financing corporations, nor is he in the business of general financing or money lending. Section 166(a)(1) of the 1954 Code provides for the deductibility of any debt which becomes worthless within the taxable year. A bona fide debt, which qualifies under this section, is defined as one which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A contribution to capital is not considered a debt for the purposes of section 166. Transactions between a corporation and its major stockholders are subject to close scrutiny. The question whether advances made to a corporation by its stockholders create a debt or constitute capital contributions is essentially one of fact to be decided upon the basis of all the facts and circumstances, *147 no single factor being decisive. Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F. 2d 222 (C.A. 9, 1961); O. H. Kruse Grain & Milling v. Commissioner, 279 F. 2d 123 (C.A. 9, 1960), affirming a Memorandum Opinion of this Court; Moughon v. Commissioner, 329 F. 2d 399 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court; Sam Schnitzer, 13 T.C. 43 (1949), affd. 183 F. 2d 70 (C.A. 9, 1950); Charter Wire, Inc. v. United States, 309 F. 2d 878 (C.A. 7, 1962); and Gooding Amusement Co. v. Commissioner, 236 F. 2d 159 (C.A. 6, 1956), affirming 23 T.C. 408 (1954). In making such a determination, the courts consider several factors, viz., the relationship of the parties, entries on the books of the corporation, whether the company is adequately capitalized, whether the funds were advanced with a reasonable expectation of repayment, and efforts to enforce collection. See O. H. Kruse Grain & Milling v. Commissioner, supra, and Gilbert v. Commissioner, 262 F. 2d 512 (C.A. 2, 1959), affirming a Memorandum Opinion of this Court, certiorari denied *148 359 U.S. 1002. Another factor in deciding such issue is the true intent of the parties. Los Angeles Shipbuilding & Drydock Corp. v. United States, supra, and Sam Schnitzer, supra. In the instant case, despite the fact that National suffered losses in the amounts of $4,181.59 in 1960 and $2,915.21 in 1961, the only 2 years of its existence, petitioner continually made advances to it without ever charging or receiving interest, without requiring the execution or issuance of any promissory notes, certificates, or other written evidence of National's indebtedness, or without setting a definite time or date for the repayment of any part of the advances. In addition, petitioner sought and took no security to guarantee repayment. Furthermore, the all inclusive nature of the advances made by petitioner indicates that the parties understood that petitioner was to underwrite all of National's financial requirements. These advances were used by National to meet its current operating expenses such as salaries, legal and promotional fees, supplies, telephone, rent, postage, commissions, and other miscellaneous items. And at no time did National make any *149 efforts to borrow money from sources other than petitioner. After National was dissolved, all of its debts to outside creditors were satisfied in full. No pro rata distribution was made between the accounts due these outside creditors and the petitioner's advances. Moreover, petitioner never instituted suit or took any other legal action to enforce payment of at least his pro rata share. There is no need to comment at length on the disproportionate relationship between National's capital structure and the funds advanced to it by petitioner. It is clear that National was inadequately capitalized and that a comparison of its capital structure with the amount of petitioner's advances is alone sufficient to support the conclusion that the advances were at all times put at the risk of the business as capital. It is equally apparent, from the nature of National's operation, that it was never intended by the petitioner to stand on its own feet financially and operate without his continuing supply of funds. The facts in this case differ in no material respect from those in a number of similar decisions wherein we have held that advances to newly-formed corporations in the guise of loans *150 were, in fact, capital contributions. See Sam Schnitzer, supra; Isador Dobkin, 15 T.C. 31 (1950), affd. 192 F. 2d 392 (C.A. 2, 1951); Erard A. Matthiessen, 16 T.C. 781 (1951), affd. 194 F. 2d 659 (C.A. 2, 1952); Hilbert A. Bair, 16 T.C. 90 (1951), affd. 199 F. 2d 589 (C.A. 2, 1952); and Martin M. Dittmar, 23 T.C. 789 (1955). In support of his contention that the advances were business loans, petitioner relies on Tony Martin, 25 T.C. 94 (1955); Commissioner v. Estate of J. Stogdell Stokes, 200 F. 2d 637 (C.A. 3, 1953), affirming a Memorandum Opinion of this Court; Vincent C. Giblin v. Commissioner, 227 F. 2d 692 (C.A. 5, 1955); and Maloney v. Spencer, 172 F. 2d 638 (C.A. 9, 1949). We think all of these cases are distinguishable. In each the advances were treated as loans and there existed such factors as promissory notes, no disproportionate relationship between the amount of the advances and the corporation's capital structure, an unexpected or compelling reason for loaning money to the corporation or books of account establishing *151 a debtor-creditor relationship. Of course, none of these factors are present here. In the Martin case there was such strong evidence that the moneys advanced by Martin to Marston, Inc., represented loans that the fact was not disputed. It is apparent that the advances made by Martin were not substantially disproportionate to the capital structure of Marston, Inc., and that the loans were evidenced by promissory notes that bore interest. A reading of the Giblin and Stokes cases indicates that the issue involved in both was whether loans made by a taxpayer to a corporation were incurred in his trade or business. There is nothing in either case regarding the characterization of the advances as loans or capital contributions because in Giblin there were interest bearing promissory notes establishing a bona fide indebtedness running from the corporation to the taxpayer, and in Stokes it was stipulated that the funds advanced to the corporation were loans. In Maloney v. Spencer, supra, where the Court was specifically confronted with the question of determining whether advances made to a corporation were loans or contributions to capital, the significant factors considered *152 in holding the advances to be loans were that there existed secured notes executed by the taxpayer and the corporation to third parties and that the sums advanced to the corporation appeared as debts due the taxpayer both on his books of account and those of the corporation. Moreover, the loans were made to the corporation pursuant to leasehold agreements. For the reasons stated herein we hold that the advances made by petitioner to National were contributions to capital rather than bona fide loans. Consequently, petitioner is entitled only to treat the loss as one arising from the worthlessness of stock, i.e., as a capital loss under section 165(g)(1). In view of our decision on this issue, we do not reach the question as to whether the advances were business or nonbusiness loans. Although the petitioners allege error with respect to the additions to tax under sections 6651(a) and 6654, they have presented no evidence. Since respondent's determination is presumptively correct, and since the petitioners have not carried their burden of proof, we hold for the respondent. The additions to tax are sustained. Decision will be entered for the respondent.