**Frederick HENDERSON and Louise Henderson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1887–N.**

United States District Court
M. D. Alabama, N. D.
July 19, 1965.

---

4. Social Security Board Minutes, November 30, 1943, cited in Stull v. Ewing, supra.

5. Stull v. Ewing, supra, 102 F.Supp. at 930 n. (3).

Robert D. Thorington, Fred S. Ball, Jr., and Melton Hill Tankersley, Montgomery, Ala., for plaintiffs.

Ben Hardeman, U. S. Atty., and Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., and Hubert M. Doster, Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

FRANK M. JOHNSON, Jr., District Judge.

This is a statutory action for the recovery of income taxes in the amount of $6,528.73, plus interest, for the calendar year 1960. The case is submitted to the Court pursuant to a stipulation of the parties for decision solely on the basis of the transcript of the proceedings of a former trial [1] held on November 19, 1964; upon this submission and upon consideration of the credible evidence, this Court, as authorized by Rule 52, Federal Rules of Civil Procedure, incorporates the appropriate findings of fact and conclusions of law in this memorandum opinion.

The sole questions involved concern whether or not certain advances to Henderson Mining Company, Inc., by the plaintiff Frederick Henderson (Louise Henderson is a party only by reason of the fact that the tax return involved was filed jointly) during the taxable year ending May 31, 1960, were loans or contributions to capital. The subsidiary question, usual in such cases,[2] concerning whether the advances in effect created a separate class of stock is also involved in the present submission.

The evidence reflects that Frederick Henderson owned 60% of the stock of Henderson Mining Company, Inc., which was incorporated under the laws of Alabama in December, 1959, with an authorized capital stock of $6,000. Its paid-in capital of $3,000 consisted of 30 shares, of which Henderson owned 18 and a Mr. Anderson and a Mr. Ward owned 6 each. Henderson Mining Company started operations in January, 1960, and elected to file tax returns on a fiscal year basis, with the first period ending May 31, 1960. A timely election to be taxed as a

---

1. Upon the former trial, the factual issues were submitted to a jury upon special written interrogatories, as provided by Rule 49(a), Federal Rules of Civil Procedure, and the jury answered these interrogatories favorable to the plaintiffs. Upon the motion of the United States made pursuant to Rule 59, Federal Rules of Civil Procedure, this Court, by formal order of January 14, 1965, granted the motion and ordered a new trial. The present submission, by stipulation, on the basis of the transcript of the proceedings at the former trial, together with all exhibits which were received in evidence at such trial, is in lieu of the re-taking of the testimony orally before the Court.

2. United States v. Title Guarantee & Trust Co., 6 Cir., 133 F.2d 990; Rowan v. United States, 5 Cir., 219 F.2d 51; O. H. Kruse Grain & Milling Co. v. Commissioner of Internal Revenue, 9 Cir., 279 F.2d 123; Montclair, Inc. v. Commissioner of Internal Revenue, 5 Cir., 318 F.2d 38; Aronov Construction Company, Inc. v. United States, 223 F.Supp. 175 (MD Ala.), aff'd, 5 Cir., 338 F.2d 337; Swift & Co. v. Morgan & Sturdivant (5th Cir. 1954), 214 F.2d 115, 49 A.L.R.2d 924.

small business corporation within the meaning of Sections 1371 and 1374, Title 26, United States Code (Treasury Regulations on Income Tax, 1954 Code, § 1.-137-1), was filed by the corporation. During the first five months of operation, the corporation acquired machinery and equipment at a cost in excess of $143,000. It was not disputed that the taxpayer and the other stockholders were aware at the time of incorporation that such equipment would be necessary to carry on the intended corporate business. On January 4, 1960, a special meeting of the directors and officers was held, during which the corporation was authorized to incur an indebtedness not to exceed $150,000, with the indebtedness to be evidenced by notes and the notes to be secured by the assets of the corporation. The stockholders made pro rata advances to the corporation, with Henderson advancing $18,000 on January 5, 1960, $12,-000 on February 1, 1960, and $6,000 on February 8, 1961. Anderson and Ward each advanced $6,000, $4,000 and $2,000 on the above respective dates. The $30,-000 advanced on January 5, 1960, was used for the purchase of an ore washer; such equipment was essential to the corporation's initial operation. The corporate officials, including Henderson, testified that it was their intention at the time of the initial formation of the business not to advance the money for the washer and that the money was advanced only because they discovered that a used machine was available. The used washer was purchased from a Mr. Gibson, with whom the taxpayer and Ward had a long acquaintance and with whom Ward was at the time associated as an accountant. There is no question that Ward was familiar with the used equipment owned by Gibson at the time of the incorporation of Henderson Mining Company and knew that certain of Mr. Gibson's ore washers were not in use.

For the alleged purpose of securing these advances, promissory notes, payable upon demand, were executed in favor of these stockholders in the amount of their advances, with the notes bearing 8% interest. No interest was paid by the corporation on these instruments during the fiscal year ending May 31, 1960. However, interest was paid on July 25 and August 3, 1960. At the end of the fiscal year ending May 31, 1960, Henderson Mining Company was also indebted to the taxpayer Henderson in an additional amount in excess of $87,000. Henderson received $1,297 as interest on this indebtedness during the calendar year 1960. On December 12, 1960, a meeting of the Board of Directors was held and the corporation was authorized to borrow $5,000 to make payments to Henderson on his $87,000 loan to the corporation. Payments on this indebtedness were timely as to principal and interest, and the loan was secured by the company's equipment.

During the first fiscal year Henderson Mining Company, Inc., sustained a net operating loss in excess of $22,000, and Henderson on his personal tax return deducted $13,463 of such loss based on Section 1374, Title 26, United States Code.[3] There is no question that Henderson and the other stockholders were aware of the losses being sustained by the corporation at the time their initial advances came due on July 5, 1960. However, no efforts were made to collect or secure these ad-

3. "§ 1374. *Corporation net operating loss allowed to shareholders*

"(a) *General rule.*—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

"(b) *Allowance of deduction.*—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year) an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c))."

vances. On July 11, 1960, after the initial $30,000 advance was due, a meeting of the Board of Directors was held, and no discussion concerning payment of either principal or interest, or an extension of said notes, was conducted. In February, 1961, after the notes were long past due, the stockholders advanced the corporation an additional $10,000; this advance was also pro rata in relation to their stock holdings.

Upon consideration of the evidence, this Court now specifically finds and concludes that the taxpayer, Frederick Henderson, and the other shareholders intended to take the risk incident to a capital investment when they made the various advances to the corporation. This question of whether advances to a corporation are, in reality, capital investments or "equity" rather than debt has been considered on numerous occasions by the United States Court of Appeals for the Fifth Circuit. The general rule that has been promulgated by these cases is that the determination of this question depends on an over-all evaluation of the true nature of the relationship created by the advance of money or property. In Montclair, Inc. v. Commissioner of Internal Revenue, 318 F.2d 38, the basic criteria to be considered in cases such as this are set forth as follows:

"The criteria to be considered in determining questions such as this case poses have been thus stated:

'There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the in-

tent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions.' O. H. Kruse Grain & Milling Co. v. Commissioner [of Internal Revenue], 9th Cir., 1960, 279 F.2d 123, 125. See Mertens Federal Income Taxation § 26.10c.

"This Circuit has rejected the notion that thin capitalization alone will justify the Commissioner in designating an indebtedness as capital, but recognizes that this factor need not be ignored in determining whether all of the facts authorize the inference of an intent to make a contribution to capital. Rowan v. United States, 5th Cir., 1955, 219 F. 2d 51. Evidence which may tend to prove that a transaction was a contribution to capital may be of many sorts. Sun Properties v. United States, 5th Cir., 1955, 220 F.2d 171; Aqualane Shores, Inc. v. Commissioner [of Internal Revenue], 5th Cir., 1959, 269 F.2d 116. No comprehensive rule can be stated which will be applicable in all cases. Commissioner [of Internal Revenue] v. T. R. Miller Mill Co., 5th Cir., 1939, 102 F.2d 599."

The United States Court of Appeals for the Sixth Circuit in United States v. Title Guarantee & Trust Co., 133 F.2d 990, in considering the distinction between a stockholder and a creditor, stated:

"*The essential difference between a stockholder and a creditor is that the stockholder's intention is to embark upon the corporate adventure, taking the risks of loss attendant upon it, so that he may enjoy the chances of profit.* The creditor, on the other hand, does not intend to take such risks so far as they may be avoided, but merely to lend his capi-

tal to others who do intend to take them." (Emphasis in original.)

In Aqualane Shores, Inc. v. Commissioner of Internal Revenue, 269 F.2d 116, and Camp Wolters Enterprises, Inc. v. Commissioner of Internal Revenue, 230 F.2d 555, an application of these criteria was made by the United States Court of Appeals for the Fifth Circuit in determining that certain alleged debt instruments were "stock or securities" within the meaning of the applicable statute.

An application of these principles as outlined in Montclair, Inc. v. Commissioner of Internal Revenue, supra, to the facts in this case requires, as stated above, a finding and conclusion that the advances in question represented a capital investment rather than a debt investment. As a matter of fact, the evidence in this case is even stronger than that in Montclair in demonstrating an intent on the part of Henderson and the other stockholders, to contribute the amounts of the advances in dispute to the capitalization of the Henderson Mining Company. These amounts as contributed by Henderson and the other stockholders were essential to the inception of the corporate venture and were, accordingly, as above stated, advanced by all of the stockholders, pro rata, in relation to their stock ownership. The fact that no effort was made to secure these amounts is significant in this case. The fact that no effort was made to enforce the instruments evidencing these advances is significant to a determination of the question in this case. The fact that no mention was made concerning the repayment of these amounts in the minutes of the board of directors' meetings, which were held after some of the instruments, purporting to evidence the obligation, were already long overdue. The time of the advances, particularly the initial advance made one month after the formation of Henderson Mining Company, is significant. The use made of the advances, that is, the purchasing of an essential piece of equipment, a used washer, is extremely significant. From all of these factors and others made plain by the evidence but not herein specifically set out, it is clear that at the time of the initial formation of the corporation Henderson Mining Company each of the shareholders was aware that they would purchase the equipment in question and that to do so would require them to advance some $30,000 or more to the Henderson Mining Company. The evidence is clear to this Court that these three shareholders intended to put this additional money in the venture when they formed the business, and there was no intention to enforce the obligations in accordance with their terms.

As to the second pro rata advance, of $20,000, to the corporation on February 1, 1960, this Court likewise specifically finds and concludes from the evidence upon this submission that the taxpayer Henderson, in reality, intended to take the risks incident to a capital investment in Henderson Mining Company. The evidence is quite clear that the money from this advance was used to supply Henderson Mining Company with the essential operating capital; it was known at the time of the incorporation that at least this amount of operating capital was essential. This advance was treated in exactly the same manner as the earlier advance, and the findings and conclusions with respect to this advance are the same as with respect to the first advance discussed in more detail above.

This Court now further finds and concludes that the instruments received by Frederick Henderson from Henderson Mining Company in exchange for his advances to that corporation constituted a second class of stock. Such being the case, the Henderson Mining Company, Inc., did not qualify as a small business corporation and the taxpayer, Frederick Henderson, is not entitled to claim the net operating cost of the corporation on his individual income tax return.

A formal order will be entered in accordance with the foregoing.