**NATIONAL FARMERS UNION SERVICE CORPORATION, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9651.**

United States Court of Appeals

Tenth Circuit.

Sept. 23, 1968.

Stanley L. Drexler, Denver, Colo. (Drexler & Wald Professional Co., and Charles F. Brannan, Denver, Colo., with him on the brief), for appellant.

Gilbert E. Andrews, Jr., Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, and Willy Nordwind, Jr., Attys., Dept. of Justice, Washington, D. C., Lawrence M. Henry, U. S. Atty., and David I. Shedroff, Asst. U. S. Atty., Denver, Colo., of counsel, with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

SETH, Circuit Judge.

This appeal has been taken from a judgment by the trial court which dismissed part of appellant taxpayer's claim for refund of federal corporate income taxes. The taxpayer claimed a refund for the years 1955 and 1957 based upon loss carry-backs. In computing the losses taxpayer deducted certain payments it had made as interest on promissory notes given to its parent corporation, National Farmers Union. The Commissioner disallowed these deductions, holding that they did not represent payments of interest on indebtedness within the meaning of section 163(a) of the 1954 Internal Revenue Code. The district court concluded that the purported loans by the parent corporation to the taxpayer were additional contributions of capital, and were not in fact loans for the purposes sought by appellant.

The material facts are not in issue. From the record it appears that the ap-pellant corporation is a wholly owned subsidiary of Farmers' Educational and Co-Operative Union of America which is an organization of farm families and is exempt from federal income taxes. The taxpayer itself is the owner of stock of several other corporations and also acts as an insurance agent. At the material times it was the owner of all of the stock of National Farmers Union Life Insurance Company which was engaged in the business of writing life insurance. Taxpayer also owned seventy-five per cent of the stock of a corporation writing casualty insurance known as National Farmers Union Property and Casualty Company. All the remaining stock of this casualty company was owned by the policyholders. The taxpayer also owned fifty per cent of the stock of a development corporation which had undertaken the development of potash properties and also owned one-half the stock of a corporation engaged in oil shale development. The record also shows that during the period in question, some of the directors of National Farmers Union were the directors of the taxpayer.

Taxpayer's subsidiaries needed additional funds for various purposes, and in order to meet these needs the taxpayer secured advances from its parent corporation, National Farmers Union, in the amount of $1,740,000 in 1957, $1,250,000 in 1958, and $435,000 in 1960. These advances were represented by promissory notes given by the taxpayer and bearing interest at six per cent payable semi-annually with the principal due on July 1, 1967. Interest payments were made on these notes in 1958, 1959, and 1960, and in computing its taxable income for those years the taxpayer deducted these payments under section 163 of the 1954 Code.

The record shows that the National Farmers Union in 1958 cancelled $1,000,-000 of the advances it had theretofore made and which were represented by the notes. If this cancellation had not been made the taxpayer would have had a deficit net worth in 1958. Taxpayer's sub-

sidiary casualty company lost approximately $1,000,000 in each of the years 1957 and 1958, and it was necessary for taxpayer to contribute funds to the casualty company in order that it could remain in business. The potash development of taxpayer's subsidiary corporation also required funds during the years 1957 through 1960, and taxpayer advanced moneys for this purpose.

The promissory notes given by the taxpayer were unsecured, contained no provision for acceleration in the event of default of interest, and no loan agreement relating to the advances existed between the taxpayer and its parent corporation. The taxpayer and its parent had made no arrangement for the creation of any sinking fund for the payment of the notes, and there was no computation of the taxpayer's income which would be available under the terms of the notes to provide for their payment at maturity. Taxpayer's subsidiary life insurance company was limited by its articles of incorporation to a three per cent dividend payment per year on its capital stock.

The trial court concluded that the advances were not in fact loans and the payments of "interest" thereon were not deductible. The court stated:

"In sum, we believe that the following facts support defendant's position that the claimed interest payments are not deductible: (1) The promissory notes were long-term obligations with no acceleration clause in the event of non-payment of interest when due; (2) The notes were unsecured and were not covered by a loan agreement, Henderson v. United States, 245 F. Supp. 782, 784 (M.D.Ala.1965); (3) A large part of the proceeds was used to supply capital to undercapitalized subsidiary corporations, Burr Oaks Corp., 43 T.C. 635 (1965); (4) The advances were made by the parent to its wholly owned subsidiary, P. M. Finance Corp. v. Comm., 302 F.2d 786 (3rd Cir. 1962); (5) Notes amounting to $1 million were actually canceled 8½ years before maturity, cf., Campbell v. Carter Foundation Production Co., 322 F.2d 827 (5th Cir. 1963); (6) The likelihood of payment of the notes at maturity, except by invasion of capital assets, was remote, for no reserve or sinking fund for their payment had been established, Charter Wire, Inc. v. United States, 309 F.2d 878, 881 (7th Cir. 1962); cf. Gloucester Ice & Cold Storage Co. v. C. I. R., 298 F.2d 183 (1st Cir. 1962); (7) An informed, unrelated lender dealing at arm's length would not have made these 'loans', Wood Preserving Corp. of Baltimore v. United States, 347 F.2d 117, 119 (4th Cir. 1965); Gilbert v. Comm., 262 F.2d 512, 513 (2d Cir. 1959).

"We therefore must conclude that plaintiff has failed to sustain its burden of proving that the interest here paid is deductible."

The issue as to whether or not "interest" on payments of the nature made by the appellant are deductible under section 163(a) of the Code is basically a question of fact. The relationship of the parties and a number of pertinent factors must be examined and related to each other. The burden is on the taxpayer to demonstrate that the payments made by it fall within the pertinent section. We agree with the trial court that the appellant failed to meet this burden. The standards and the policy were described by this court in McSorley's, Inc. v. United States, 323 F.2d 900 (10th Cir.).

It is further well established that on appeal this court will not disturb the conclusion of the trial court when reasonable conflicting inferences may be drawn and conclusions reached from an analysis and balancing of the several factors. Covey Investment Co. v. United States, 377 F.2d 403 (10th Cir.). The facts and circumstances must be developed in each case, and there is no single controlling condition or characteristic. John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 66 S.Ct.

299, 90 L.Ed. 278; United States v. Intermountain Furniture Manufacturing Co., 363 F.2d 554 (10th Cir.); Crawford Drug Stores v. United States, 220 F.2d 292 (10th Cir.); Arlington Park Jockey Club, Inc. v. Sauber, 262 F.2d 902 (7th Cir.).

■ This case is different from the ordinary case in the fact that the parent corporation is exempt from federal income taxes and thereby one of the factors which sometimes motivates "loan" arrangements is absent.

One of the strongest arguments advanced by appellant is based upon the case of Jack Daniel Distillery v. United States, 379 F.2d 569, 180 Ct.Cl. 308 (1967). This argument is basically that the funds secured by the taxpayer were in fact loans made to it by the public using its parent corporation, the National Farmers Union, merely as a conduit. The funds which the parent corporation provided to the taxpayer were secured by it through the sale of debentures to the public. The appellant urges that these loans were really made to the appellant, or could have been, and that the prospectus issued by the parent corporation indicated that the funds would be at least in part so used. The Court of Claims in the Jack Daniel Distillery case, supra, held that under the facts there present, the parent corporation borrowed funds to provide the Jack Daniel corporation with the needed money and in the borrowing the purpose was disclosed. The parent corporation there acted merely as an agency for the procurement of funds for the subsidiary. The Court of Claims held that the advances were loans and the interest was deductible. The court found that the lending agency knew that the money was to be provided to the taxpayer and made the loan in reliance upon the ability of the subsidiary to repay the funds. However, in the case at bar the facts and the findings of the trial court do not support the appellant's argument. There was no showing that the purchasers of the debentures knew of the use to which the money would be put by National Farmers Union because the prospectus was equivocal on this point. There was no showing of any awareness on the part of the investors in the debentures that they relied on taxpayer's ability to repay its parent. Also the indicia of an arm's length transaction present in Jack Daniel are not present here.

The appellant strongly attacks the trial court's finding as to one of the several factors evaluated. This is that an unrelated investor dealing at arm's length with appellant would not have made such a loan. This finding of the trial court is based in part upon one of the Government's witnesses who was an officer in a large Denver bank. This witness testified that without question a commercial bank or other unrelated informed lender would not have made the advances. In our opinion the finding of the trial court as to this particular factor is well supported by the record. This opinion of the witness is based upon the absence of security, upon the apparent inability of the taxpayer to service the debt without invading its working capital, and the absence of any loan agreement, acceleration provisions, and without any analysis of cash flow from taxpayer's subsidiaries.

We have examined the other factors present, particularly the apparent inability of taxpayer to repay, and conclude that the substance of the transaction was as found by the trial court. The absence of tax-avoidance motives by the parent corporation does not of itself lead to a different result.

Affirmed.