**Edward A. HIRS and Louise B. Hirs, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**PARK FOREST DEVELOPMENT CORPORATION, as successor to and assignee of Forlands, Inc., and Robert Diehl, Robert Berg and Vincent F. Kilborn, as Trustees in Dissolution or Liquidation of Forlands, Inc., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. Nos. 3236–64, 3237–64.

United States District Court
S. D. Alabama, S. D.

July 26, 1965.

Vincent F. Kilborn, Mobile, Ala., for plaintiffs.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Hubert M. Doster, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

1. These are consolidated suits for refunds of income taxes. They involve the character and treatment to be accorded payments made the plaintiffs in Case 3236–64 by Forlands, Inc., a corporate taxpayer now dissolved. Its trus-

tees in liquidation and the assignee-owner of its assets, sue in Case 3237–64. The corporate case involves the same payments made to Mr. and Mrs. Hirs in the companion suit. The reciprocal tax effects of the payments present a common question. Were certain advances made to Forlands, Inc., by Mr. and Mrs. Hirs, contributions to capital or loans? The Court finds the payments were loans.

2. Mrs. Hirs is a housewife. Her husband is a corporate executive. Messrs. Robert Berg and Robert Diehl are active real estate dealers and subdivision developers in Mobile, Alabama, operating through one principal corporation, Berg & Diehl, Inc. Neither Mr. nor Mrs. Hirs had an interest in Berg & Diehl, Inc. The parties are not related.

3. In April and May 1958 Messrs. Berg and Diehl for Berg & Diehl, Inc. agreed to buy from Alpine Hills Land Company, with whom none of these parties had connections, an eighty acre tract of land suited for development as a residential subdivision in Mobile. A firm contract for its purchase was entered into and $2,000.00 earnest money deposited with the seller. In addition, for $5,000.00 Berg & Diehl, Inc., also acquired from the seller an option to purchase an additional adjacent eighty acres. The price to be $2,000.00 an acre for all land bought. The contract for the first eighty acres called for a total down payment, including earnest money, of $30,000.00. The balance of approximately $130,000.00, to be paid in three annual installments, was to be secured by a vendor's lien reserving title to the seller until payment but providing for acreage releases from time to time on partial payments made. The option contract for the second eighty acres called for $40,000.00 down (including the $5,-000.00 paid for the option), with substantially similar provisions for payment of the balance over three years, for acreage releases and for a reserved seller's lien until payment made.

Messrs. Berg and Diehl personally agreed to endorse the notes for the debt on the first eighty. Later they endorsed the note for the debt on second eighty.

4. Having committed themselves, Berg and Diehl sought advice from their auditor and his aid in securing a loan to complete their purchase. Mr. George Randall, their accountant, handled as well certain corporate accounting for the corporation Hirs was connected with and knew him. Randall outlined to Berg and Diehl suggested forms their purchase transactions might take and their development plans might follow. He prepared rough, tentative timetables for development of the lands and proposed schedules for borrowings and repayments. Later he suggested that they approach Hirs for a loan and, as an inducement, offer him a third of the stock in the corporation Randall proposed to establish, to serve as a bonus above the interest paid to make the deal attractive to Hirs. The idea met approval by Berg and Diehl. Randall then brought the parties together. Agreement was reached. Hirs, for himself and his wife, agreed to advance temporary loans of sufficient money to help complete the down payment on the first eighty acres of land. Berg and Diehl were to develop the lands through their own corporations, in which Hirs would have no interest. If the first developed parts of the original eighty acres did not sell rapidly or its subdivision was not sufficiently underway by the time for taking up the option, Hirs agreed he would make additional loans to take the option up. All loans by Hirs were to be at six percent interest and be payable on demand. The Randall projections anticipated all loans would be repaid in a short time and at least within three years. It was agreed that Forlands, Inc. be formed with a paid in capital of $3,-000.00, one third of the stock being subscribed by Mr. and Mrs. Hirs and the other two thirds being held by Berg and Diehl. It was agreed further that the land bought would secure Hirs on the loans in this fashion: if for any reason the project did not get off the ground and repayment was delayed, Berg and

Diehl would on demand sell Hirs their stock at cost so that, in acquiring 100% stock ownership of the corporation, Hirs would be secured on the loans.

5. Forlands, Inc. was incorporated June 12, 1958. The authorized capital was $6,000.00; the paid in capital was half this amount; $1,000.00 for 100 shares was paid by Berg, $1,000.00 for the same amount was paid in by Diehl and $500.00 each was paid by Mr. Hirs and his wife, each of whom got fifty shares of stock. The original Directors were Berg, Diehl and Hirs; Hirs was not an officer of the corporation however.

Two days later Hirs and his wife advanced $17,500.00 each to the corporation. Their checks indicated these were loans. The corporation gave each a demand note bearing six percent interest for the amount loaned. Minutes of the corporation authorized the borrowing of these amounts and delivery of the notes. On June 16, the corporation bought the first eighty acres. It paid $28,000.00 as the balance of the down payment, partly with proceeds of the Hirs loans. It executed its corporate note for the balance of purchase money, endorsed personally by Messrs. Berg and Diehl. The vendor's lien deed was delivered to the corporation. At the same time, the corporation got its written option from the seller to buy the second eighty acres within 120 days. Forlands, Inc., then repaid Berg & Diehl, Inc., the $2,000.00 earnest money advanced by that corporation and the $5,000.00 it had advanced originally for the option.

Messrs. Berg and Diehl then organized for themselves Park Forest Development Corporation for the planning and developing of subdivisions of land and, originally, to subdivide and develop lands to be bought by it from Forlands. Park Forest bought from Forlands, Inc., some twelve acres of land for the initial development in August 1958, giving a note for the price which it paid in May of the following year. Hirs had no interest in this development company.

In September 1958 the option for purchase of the second eighty acres of land was exercised by Forlands, Inc. It made a down payment of $40,000.00 consisting of the $5,000.00 paid for the option and $35,000.00 additional paid on closing the sale. A like vendor's lien deed on this second eighty acres was delivered. The note for the unpaid balance of $125,-600.00 owing on this second eighty acres was also endorsed by Messrs. Berg and Diehl personally. At this time Berg & Diehl Development Corporation, another corporation wholly owned by Messrs. Berg and Diehl or Berg & Diehl, Inc., made a demand loan to Forlands evidenced by note, and bearing interest, for $35,000.00. This sum was repaid a month later by Forlands.

On October 8, 1958, just before repayment by Forlands of the Berg & Diehl Development Corporation loan, Hirs and his wife each loaned Forlands, Inc. $27,-500.00, receiving in exchange demand notes of the corporation payable to each bearing 6% interest. A year later each made Forlands another loan of $21,-000.00 also evidenced by like notes in each case.

Shortly after Park Forest Development Corporation had made its original land purchase from Forlands and started development, it suffered set backs. Before it could build and sell its houses on the lots into which it had divided its tract, the real estate market in the area suffered a slump. Demand was off. The timetable by which Park Forest planned to buy, develop and pay for its acreages was thrown off schedule. Funds for Forlands to pay its vendor for land bought by it or to pay its note obligations to the Hirs depended on land purchases from it. Park Forest was not developing and selling its lots rapidly enough to meet its timetable of land purchases and land use. Mr. and Mrs. Hirs became concerned for repayment of their loans. They therefore called on Berg and Diehl to honor their original agreements and sell the stock each owned in Forlands to the Hirs. This was done. In August

1960 Mr. and Mrs. Hirs bought the Forlands' stock owned by Messrs. Berg and Diehl for $1,000.00 paid each. Later, after the audit period here in question, the Hirs sold all Forlands and divested themselves of any connection with that corporation.[1]

The dates and amounts of loans made by Mr. and Mrs. Hirs to Forlands, therefore, were as follows:

| Date | Edward A. Hirs | Louise B. Hirs |
|---|---|---|
| June 14, 1958 | $17,500.00 | $17,500.00 |
| October 8, 1958 | $27,500.00 | $27,500.00 |
| September 17, 1959 | $21,000.00 | $21,000.00 |

The Hirs received payments from Forlands, Inc. in the years embraced by the audits involved in this suit as follows:

| | Edward A. Hirs | | Louise B. Hirs | |
|---|---|---|---|---|
| Date | Principal | Interest | Principal | Interest |
| July 6, 1959 | | $2,109.59 | | $2,109.59 |
| March 16, 1960 | $5,000.00 | $2,808.56 | $5,000.00 | $2,808.56 |
| August 12, 1960 | | $ 772.67 | | $ 772.67 |
| March 27, 1961 [2] | $2,500.00 | $3,050.00 | $2,500.00 | $3,050.00 |

Timely tax returns were filed by Forlands, Inc., for fiscal years ending May 31, 1959, 1960 and 1961. Taxes shown as due were paid. On the tax returns each year Forlands claimed as deductions the amounts set forth above as interest paid Mr. and Mrs. Hirs.

Timely joint returns were filed by Mr. and Mrs. Hirs for calendar years 1959, 1960 and 1961. Each year they reported as interest income the amounts shown above as being paid as interest by Forlands. They did not report amounts shown above as principal payments.

On audit of the tax returns the Commissioner allowed as a deduction to Forlands interest paid to the Hirs on the $21,000.00 loans each made in September 1959. However, he disallowed the deduction to the corporation for interest payments to the Hirs on loans of $17,500.00 each made in June 1958 and the further loans of $27,500.00 each made in October 1958. He allowed an interest deduction for interest paid Berg & Diehl Development Corporation on the $35,000.00 loan to Forlands by it in September 1958 and repaid approximately a month later.

1. Park Forest Development Corporation, at a later time than the tax periods involved here, bought all the stock of Forlands, Inc. It later dissolved that corporation and succeeded to its assets including the tax refund claim here involved. Park Forest and the directors of Forlands, Inc. who, on dissolution became trustees for purposes of winding up its affairs in liquidation, became plaintiffs here in the corporate refund case. At no time were the Hirs interested in any way in this Park Forest Development Corporation.

2. Forlands, Inc. made other payments in years after the fiscal year 1961 which substantially reduced the amounts owing. Mr. and Mrs. Hirs received such later amounts in later years, Since these later payments are not involved in the audits which resulted in these suits, details of the payments and receipts, except to note the fact of payment, are not set forth.

The adjustments made by the Commissioner resulted in deficiencies against the corporation. The deficiencies were assessed, paid and refund claims were timely filed. Upon denial, suit followed.

On the obverse side of the transaction, the Commissioner treated the amounts received back and reported by the Hirs for "interest" as dividends, entitled to dividend credits. Pursuing this, it followed that such amounts as were repaid on principal of "loans", were treated not as repayment of principal but dividends, includable in income of the Hirs and taxable as dividends received.

The various adjustments resulted in a small overassessment on the Hirs 1959 returns due to the change in treatment of the interest received to a dividend category. It also resulted in deficiencies in 1960 and 1961, occasioned by failure to report the loan repayments by Forlands as dividends. Other adjustments not here material or complained of, were made to the individual returns. The total deficiencies asserted, less credits from resulting overassessment because . of the 1959 adjustments, were paid. Timely refund claims, for the tax deficiency payments resulting from this treatment of payments made them as dividend income, followed. They were denied. Suit was filed.

The issue to be determined is whether the monies advanced by Mr. and Mrs. Hirs on June 14, 1958, and on October 8, 1958, constituted contributions to the capital of Forlands, Inc., or created a bona fide debtor-creditor relationship.

■ The Court concludes these were bona fide loans. The intent of the parties at the outset was to make loans. The loan nature of the transactions was thoroughly understood by all. It was contemplated the loaned amounts would be repaid over a short period of time. The loans were evidenced by notes which bore interest at a reasonable rate. The notes were demand instruments on the face of each. In no manner were debts owing on these loans subordinated to any other corporate obligations. The agreement of the parties for transfer of stock by Messrs. Berg and Diehl at cost, if repayment of the loans proceeded slowly, was in fact an effective security for the debt. Through it the Hirs would have the land itself secure the debt if prompt payment was not made as expected. The history of the transaction shows this actually did take place later. The Hirs enforced the agreement to protect their loan.

■ Monies advanced by them were not hazarded at the risks of the business under arrangement as we have here. Moreover, while not conclusive, weight must be accorded the fact there was no agreement for stockholders to make loans in proportion to stock ownership. Stock was never held in ratio to loans. Holding only one-third of the stock, Hirs and his wife advanced all of the questioned loans.

The Court has seen the various instruments which played a part in these transactions, from the accountant's initial memoranda of discussions with Messrs. Berg and Diehl forward, and has heard the testimony. It is satisfied the parties intended a debtor-creditor relationship between the corporation and the Hirs and that this was a bona fide relationship established.

■ The test in any risk-capital versus loan situations is, in the final result, intention, to be found from consideration of all the facts and the evidence. Government counsel has furnished the Court an ably written and exhaustive brief which demonstrates this. It serves little useful purpose to review the many cases. Each turns on its own facts. An opinion by the District Court in Royalty Service Corporation v. United States, 178 F. Supp. 216, discusses about as well as any, some of the factors which enter into an ultimate finding that a transaction is or is not an investment of capital or a loan. I am satisfied of the intent here. The Commissioner was in error in holding the loans were capital contributions. They were loans. I so hold.

Judgment will be entered accordingly for refund of the appropriate sums to the taxpayer in each case.