**Louis E. ACKERSON and Sarah M. Ackerson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 5079.

United States District Court
W. D. Kentucky,
at Louisville.

Sept. 27, 1967.

Robert L. Ackerson, Louisville, Ky., for plaintiffs.

Ernest W. Rivers, U. S. Atty., for defendant.

## MEMORANDUM

BROOKS, Chief Judge.

The question presented in this action for a tax refund concerns the characterization of amounts advanced to a newly formed corporation which were subsequently repaid. Internal Revenue determined that the amount advanced was equity investment the repayment of which constituted a dividend. The taxpayer contends that the amount in question is a loan and, therefore, the repayment of principal is not taxable as income. The question of whether amounts advanced to a corporation constitute equity or indebtedness is one of fact determined by the surrounding circumstances. Gooding Amusement Company v. Commissioner of Internal Revenue, 236 F.2d 159 (6th Cir. 1956), affirming 23 T.C. 408 (1954).

The plaintiffs, Louis E. Ackerson and Sarah M. Ackerson, filed joint tax returns in 1960 and 1961. Mr. Ackerson is a one/fifth shareholder of the Modern Concrete Products Company, hereinafter referred to as "New Modern", a corporation engaged in the manufacture and sale of concrete blocks and related items used in the construction industry. In 1957 Marion Miller was the sole stockholder of the Modern Concrete Products Company, hereinafter referred to as "Old Modern". At that time the corporation was unsuccessful and Miller had been unable to improve the earnings due partly to his failing health.

Miller decided that under the circumstances it would be best to sell the corporation; he contacted Chester Jennings, President of the Dahlem Construction Company, and offered to sell Old Modern. As a result of this offer, a written purchase agreement between Miller and five individuals was executed. The five buyers were Joseph C. Dahlem, majority stockholder of the Dahlem Construction Company; Al J. Schneider, majority stockholder of A. J. Schneider Construction Company; Harold Allen, President of the Concrete Supply Company; the plaintiff, an attorney; and Chester Jennings. It was the understanding between the parties that after the purchase the Dahlem and Schneider construction companies would purchase all their needs for concrete blocks and related items from New Modern. Allen felt he could generate additional business through his contacts with the industry. Ackerson was to handle the legal and accounting work.

It was decided a new corporation, New Modern, would be formed that would purchase the stock of Old Modern from Miller for $120,000. Each of the shareholders of New Modern contributed $2,000 in exchange for stock and $2,000 in exchange for promissory notes of New Modern for a total of $20,000. New Modern then purchased the stock of Old Modern with a $20,000 down payment with the remaining $100,000 evidenced by a negotiable promissory note payable in forty quarterly installments of $2,500 each, plus 5% interest on the unpaid balance and with the right reserved to pay the entire amount due at any time on or after January 1, 1959. Miller required that the five shareholders guarantee payment of the note, that until the note was paid New Modern be forbidden to pay dividends or repay the debts to the shareholders, that no indebtedness could be incurred, other than in the ordinary course of business, which would be a lien on the assets of the company prior to that of the $100,000 note, and that Miller be provided with periodic statements of New Modern's operations.

Almost immediately after the completion of the transaction, Old Modern was dissolved and all its assets and liabilities were transferred to New Modern as the sole shareholder. From the very beginning the new corporation was a complete success. It never failed to meet its obligation on its note to Miller and the terms of the note were fully complied with in all the particulars.

In October, 1960, the balance due on the note to Miller was completely paid with $70,000 borrowed from the Liberty National Bank and Trust Company. The bank loan was evidenced by the note of New Modern on which the five shareholders were severally liable for one-fifth of the loan as endorsers and guarantors. At the time the bank loan was acquired, New Modern's balance sheet showed liabilities of $142,000 and capital stock of $88,500. This note was completely paid in April, 1963.

The government contends that all payments made from corporate earnings and profits in retirement of the debt during 1960 and 1961 constitute dividends to the shareholders of New Modern. It maintains that in substance the shareholders as guarantors were the true creditors of New Modern rather than Miller or the bank, and that because of New Modern's thin capitalization any

amounts paid on the alleged debt must actually be considered as distributions with respect to stock and taxable under Section 301 of the Code.

Although there are no cases precisely in point, the present situation is in many ways very similar to the transactions involved in Murphy Logging Company v. United States, 378 F.2d 222 (9th Cir. 1967); Frank Ciaio, 47 T.C. 447 (1967); Princess Coals, Incorporated v. United States, 239 F.Supp. 401 (1965); William F. Wolf, Jr., 43 T.C. 652 (1965); Hirs v. United States, 243 F.Supp. 910 (1965); Arthur J. Kobacker, 37 T.C. 882 (1962); Gazette Telegraph Co., 19 T.C. 692 (1953). Each of these cases involved guaranteed corporate debts used to finance the purchase of the business, and yet none of them support the position now being taken by the defendant that payments on the guaranteed debt constitute constructive dividends to the shareholders.

A full consideration of the record, briefs and arguments of counsel discloses that the notes represent a valid corporate indebtedness. In determining whether amounts advanced to a corporation constitute equity or indebtedness, the following are helpful guidelines: (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions. O. H. Kruse Grain & Milling v. Commissioner of Internal Revenue, 279 F.2d 123 (9th Cir. 1960).

Here the instruments were negotiable promissory notes with fixed maturity dates, bearing a fixed rate of interest; the notes could not be subordinated to the claims of other creditors; the periodic payments were actually made in accordance with the terms of the instruments; no payments could be made to the shareholders on the $10,000 indebtedness or as dividends until the notes were fully paid; and valid business reasons existed for the issuance of the notes.

The corporate collateral securing the $100,000 does not appear inadequate. After the dissolution of Old Modern, the balance sheet of New Modern showed assets valued at $131,505.80 securing $108,493.67 in debts (including those on a par with the $100,000 note) providing a margin of security of more than 20%. These assets constituted income producing property which required no further financing. Compare: Aqualane Shores, Inc. v. Com'r of Internal Revenue, 269 F.2d 116 (5th Cir. 1959) and Sun Properties, Inc. v. United States, 220 F.2d 171 (5th Cir. 1955), and it cannot be said that Miller's requirement that the shareholders guarantee the note necessarily indicates that the corporate collateral was inadequate because Miller's primary reason was to insure that the adequate corporate collateral could not be made inadequate by an attempt of the shareholders to drain off assets through dividends or other distributions. Further, New Modern had valuable assets in addition to those shown on its balance sheet. Mr. Ackerson testified that "there was enough captive business", referring to the purchase agreement by several of the stockholders, "to triple the sales." The risk of loss under the circumstances was remote and the expectation of success was unchallenged. The anticipated success of New Modern was well founded. In its first year of operation its sales were four times greater than that of the old corporation for the previous year, and consequently the business went from a losing operation to one producing substantial profits. The success of New Modern was due not only to the additional sales to the Dahlem and Schneider construction companies, but also to the more efficient operation under the management and direction of men

**478**

with proven business ability. See Murphy Logging Company v. United States, supra.

It is concluded that the transaction was properly treated as a debt and that none of the amounts paid by New Modern in satisfaction of that indebtedness can be characterized as dividends to the taxpayers.

The plaintiff shall tender judgment on notice.